Brendan J. O'Rourke
Lee M. Popkin
Tiffany M. Woo
PROSKAUER ROSE LLP
Eleven Times Square
New York, NY 10036
Tel:  212.969.3000
Fax:  212.969.2900
*Attorneys for Defendant*
*Church & Dwight Co., Inc.*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

GLOBAL BRAND HOLDINGS, LLC,                    :
                                                                          :    No. 1:17-cv-06571-KBF
                                    Plaintiff,              :
                                                                          :
                    v.                                            :
                                                                          :
CHURCH & DWIGHT CO., INC.,                         :
                                                                          :
                                    Defendant.          :
                                                                          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X


**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO**
**DISMISS PLAINTIFF'S TRADEMARK DILUTION CLAIMS**

# TABLE OF CONTENTS

Page

I.    PRELIMINARY STATEMENT ....................................................................... 1

II.    RELEVANT ALLEGATIONS........................................................................ 1

III.    PROCEDURAL HISTORY............................................................................ 2

IV.    STANDARD OF REVIEW ........................................................................... 3

V.    ARGUMENT ................................................................................................. 4

    A.    GLOBAL DOES NOT PLAUSIBLY STATE A CLAIM FOR FEDERAL TRADEMARK DILUTION. ....................................................... 4

        1.    Global's Inability to Satisfy The "Famous" Requirement of Section 1125(c) Can and Should Be Decided on a Motion to Dismiss. ................. 5

        2.    Global Fails To Allege Facts That Would Permit The Court To Plausibly Infer That Its XOXO Marks are "Truly Famous."...................... 7

            i.    Global Alleges That Its Products Are Marketed Toward A Niche Market Of "Young, Fashion-Conscious Women," But Niche Markets Are Not Enough To Show Fame. ................... 8

            ii.    Global's "Hundreds Of Millions Of Dollars In Wholesale Sales" Over The Course Of 26 Years Is Insufficient To Show That Its Mark Is "Famous." ............................................... 10

            iii.    Global's Allegation That it Spent "Millions of Dollars" to Increase Consumer Recognition is Not Enough to Plead Fame............................................................................................... 11

            iv.    Global's Registration And Purportedly Continuous Use Of The XOXO Mark Are Insufficient To Adequately Allege Fame................................................................................................... 12

    B.    GLOBAL'S STATE LAW DILUTION CLAIM IS BARRED BY SECTION § 1125(C)(6)................................................................................. 13

        1.    Cases Holding That a Federal Registration is Not a Basis for Dismissal of a State Law-Based Dilution Claim Are Incompatible With the Language, Purpose, and Intent of the Lanham Act.................... 14

    C.    GLOBAL SHOULD NOT BE GRANTED LEAVE TO AMEND ITS PLEADING.................................................................................................... 16

VI.    CONCLUSION............................................................................................... 17

i

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009)........................................................................................3, 6, 7

*Avery Dennison Corp. v. Sumpton,*
189 F.3d 868 (9th Cir. 1999) ...............................................................................5, 10

*Bd. of Regents, Univ. of Tex. Sys. v. KST Elec., Ltd.,*
550 F. Supp. 2d 657 (W.D. Tex. 2008)..................................................................10

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007)..............................................................................................3

*Boarding Sch. Review, LLC v. Delta Career Educ. Corp.,*
No. 11 Civ. 8921, 2013 WL 6670584 (S.D.N.Y. Mar. 29, 2013) ................................7, 11, 13

*Coach Servs., Inc. v. Triumph Learning, LLC,*
668 F.3d 1356 (Fed. Cir. 2012)..............................................................................12

*Dietrich v. Bauer,*
76 F. Supp. 312 (S.D.N.Y. 1999)...........................................................................16

*Helios Intern. S.A.R.L. v. Cantamessa USA, Inc.,*
No. 12 Civ. 8205, 2013 WL 3943267 (S.D.N.Y. July 31, 2013) .........................................7, 9

*Heller Inc. v. Design Within Reach, Inc.,*
No. 09 Civ. 1909, 2009 WL 2486054 (S.D.N.Y. Aug. 25, 2007) ............................................9

*Jada Toys, Inc. v. Mattel, Inc.,*
518 F.3d 628 (9th Cir. 2008) ...............................................................................15

*Joint Stock Co. Channel One Russia Worldwide v. Infomir LLC,*
No. 16 Civ. 1318, 2017 WL 696126 (S.D.N.Y. Feb. 15, 2017),
*report & recommendation adopted sub nom. Joint Stock Co. v. Infomir LLC,*
No. 16 Civ. 1318, 2017 WL 2988249 (S.D.N.Y. Mar. 27, 2017). ...............................5, 10, 11

*Luv N' Care Ltd. v. Regent Baby Prods. Corp.,*
841 F. Supp. 2d 753 (S.D.N.Y. 2012)........................................................... passim

*Maker's Mark Distillery, Inc. v. Diageo N. Am., Inc.,*
703 F. Supp. 2d 671 (W.D. Ky. 2010)....................................................................13

*Michael Caruso & Co. v. Estefan Enterprises, Inc.*,
   994 F. Supp. 1454 (S.D. Fla. 1998), *aff'd sub nom. Caruso v. Estefan*,
   166 F.3d 353 (11th Cir. 1998) ......................................................................................9

*Miller v. French*,
   530 U.S. 327 (2000)....................................................................................................15

*New Jersey Physicians United Reciprocal Exchange v. Privilege*,
   No. 15 Civ. No. 6911, 2016 WL 6126914 (D.N.J. Oct. 18, 2016) ..........................14

*Savin Corp. v. Savin Group*.,
   391 F.3d 439 (2d Cir. 2004).........................................................................................6

*Schutte Bagclosures Inc. v. Kwik Lok Corp.*,
   48 F. Supp. 3d 675 (S.D.N.Y. 2014).............................................................................5

*Small Bus. Bodyguard, Inc. v. House of Moxie, Inc.*,
   No. 14 Civ. 7170, 2014 WL 5585339 (S.D.N.Y. Oct. 30, 2014) ................................9

*Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*,
   588 F.3d 97 (2d Cir. 2009)...........................................................................................1

*TCPIP Holding Co. v. Haar Commc'ns, Inc.*,
   244 F.3d 88 (2d Cir. 2001)...............................................................................4, 5, 11

*Urban Grp. Exercise Consultants, Ltd. v. Dick's Sporting Goods, Inc.*,
   No. 12 Civ. 3599, 2013 WL 866867 (S.D.N.Y. Mar. 8, 2013) ...............6, 7, 12, 16

*Westchester Media Co. v. PRL USA Holdings, Inc.*,
   103 F. Supp. 2d 935 (S.D. Tex. 1999), *vacated in part on other grounds*,
   *Westchester Media Co. v. PRL USA Holdings, Inc.*, 214 F.3d 658 (5th Cir.
   2000) ....................................................................................................................14, 15

## STATUTES

15 U.S.C. § 1114.............................................................................................................2

15 U.S.C. § 1125(a) .......................................................................................................2

15 U.S.C. § 1125(c) ..............................................................................................passim

New York General Business Law § 360-l ...............................................................1, 3, 14

## RULES

Federal Rules of Civil Procedure:

   Rule 12(b)(6)..........................................................................................................3, 7

**OTHER AUTHORITIES**

Barton Beebe, *A Defense of the New Federal Trademark Antidilution Law,* 16 16
    Fordham Intell. Prop. Media & Ent. L.J. 1143 ........................................................................6

H.R. Rep. No. 104–374 (1995) ................................................................................................15

H.R. Rep. No. 112-647 (2012) ................................................................................................15

4 J. McCarthy, *McCarthy on Trademarks and Unfair Competition* (5th ed. 2017) ............. passim

## I.      PRELIMINARY STATEMENT

Last month, Church & Dwight filed a motion to dismiss the federal trademark dilution claim Global Brand Holdings, LLC asserted in its complaint.  After that motion was fully briefed, Global amended its pleading.  Global's amended pleading does not contain a single additional factual allegation and therefore does nothing to address the deficiencies in its federal dilution claim previously outlined; namely, Global's failure to plausibly allege that its XOXO mark enjoys wide recognition among the general consuming public of the United States.  Instead, likely hoping to take advantage of the fact that a New York state law claim for dilution does not require the same level of fame as a federal claim, Global simply added an additional claim for dilution under New York General Business Law § 360-l.[1]  Global's state-law dilution claim, however, is barred by the plain language of the Lanham Act.  *See* 15 U.S.C. §1125(c)(6).  The Court should therefore dismiss both of Global's trademark dilution claims.

## II.     RELEVANT ALLEGATIONS

XOXO is a common idiomatic expression meaning "hugs and kisses."  The phrase is often used as a valediction at the conclusion of correspondence.  *See*, *e.g.,* Am. Compl. ¶ 20 (depicting XOXO advertisements with the "autographed" signoffs, "Hugs & Kisses, Miranda Kerr" and "xoxo! Chrissy").[2]

Founded in 1846, Church & Dwight is a major American manufacturer of household and personal care products.  *See* "Church & Dwight Overview," *available at* https://churchdwight.com/company/ (last visited Nov. 6, 2017).  Its portfolio of well-known brands includes Trojan, Arm & Hammer, and OxiClean, among many others.  *Id.*  In February

---

[1] New York's trademark dilution law, unlike federal dilution law, "does not require a mark to be 'famous' for protection against dilution to apply."  *Starbucks Corp. v. Wolfe's Borough Coffee, Inc*., 588 F.3d 97, 114 (2d Cir. 2009).

[2] The Amended Complaint is attached as Exhibit 1 to the accompanying Declaration of Lee M. Popkin.

2017, Church & Dwight launched a line of XOXO by TROJAN condoms.  Am. Compl. ¶ 22.
The United States Trademark Office issued Church & Dwight a registration for the mark XOXO
for use in connection with condoms on July 11, 2017.  *Id.* ¶ 67, Ex. C.

Global alleges that it sells a multitude of products under its XOXO brand, including
women's apparel, toiletries, glasses, luggage, cosmetics, shoes, and perfumes, most of which are
"designed for young women."  *Id.* ¶¶ 9, 10, 12 & Ex. A.  Global contends that its XOXO-
branded products are "distributed and sold nationwide by prominent retailers."  *Id.* ¶ 15.  Global
owns United States Trademark Registrations for the mark XOXO in various classes and
categories (*see id.* ¶ 12), none of which includes condoms.

The Amended Complaint contains only limited allegations regarding the purported fame
of Global's XOXO marks.  Global maintains that "[a]dvertisements, news articles, and editorials
featuring the XOXO Trademarks have appeared in leading mainstream and fashion
publications[,]" that some of its other advertising campaigns featured well-known fashion
models, and that one of its advertising campaigns for the XOXO brand "achieved significant
media attention[.]" *Id.* ¶¶ 19-20.  Global asserts that, since 1991, it has invested "millions of
dollars" in the brand and "made hundreds of millions of dollars in wholesale sales of goods
bearing the XOXO Trademarks."  *Id.* ¶¶ 16, 18.  Global also summarily concludes that
"[t]hrough extensive sales, promotion and media coverage," consumers have "come to associate
the XOXO Trademarks with high quality goods and services emanating exclusively from
Global."  *Id.* ¶¶ 18, 21.

## III.   <u>PROCEDURAL HISTORY</u>

Global filed this action on August 29, 2017, asserting claims for (1) federal trademark
infringement (15 U.S.C. § 1114); (2) false designation of origin (15 U.S.C. § 1125(a)); (3)
trademark infringement under New York common law; (4) unfair competition under New York

common law; (5) federal trademark dilution (15 U.S.C. § 1125(c)); and (6) cancellation of Church & Dwight's federal trademark registration for XOXO (U.S. Reg. No. 5,242,035).  Dkt. 1.[3]  Church & Dwight moved to dismiss Global's federal trademark dilution claim on October 4, 2017.  Dkt. 17-20.  Global filed its opposition on October 18, 2017 (Dkt. 24), and Church & Dwight filed its reply brief on October 25, 2017 (Dkt. 25).

Also on October 25, 2017, Global filed an amended complaint.  Dkt. 26.  The only change in Global's amended pleading is the addition of a claim for dilution under New York General Business Law § 360-l.  Am. Compl. ¶¶ 73-78 (Seventh Claim for Relief).[4]

## IV.   STANDARD OF REVIEW

To survive a motion to dismiss pursuant to Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  This standard requires "more than a sheer *possibility* that a defendant has acted unlawfully."  *Id.* (emphasis added).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'"  *Id.* (quoting *Bell Atl. Corp.*, 550 U.S. at 557).  Although the Court accepts as true all well-plead factual allegations, it does not credit "mere conclusory statements," "labels," or "[t]hreadbare recitals of the elements of a cause of action."  *Id.*

---

[3] Global's Complaint is attached as Exhibit 2 to the Popkin Declaration.

[4] A "redline" comparison of Global's original Complaint to its Amended Complaints is attached as Exhibit 3 to the Popkin Declaration.

V.     **ARGUMENT**

A.     **GLOBAL DOES NOT PLAUSIBLY STATE A CLAIM FOR FEDERAL TRADEMARK DILUTION.**

The first and critical element of a federal trademark dilution claim is fame.  The Lanham Act defines a famous mark as one that is "widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner."  15 U.S.C. § 1125(c)(2)(A).  Courts may consider the following (non-exhaustive) list of factors in determining whether that standard has been satisfied: (i) the duration, extent, and geographic reach of advertising and publicity of the mark, whether advertised or publicized by the owner or third parties; (ii) the amount, volume, and geographic extent of sales of goods or services offered under the mark; (iii) the extent of actual recognition of the mark; and (iv) whether the mark was registered on the principal register.  15 U.S.C. § 1125(c)(2)(A)(i)-(iv).

As the Second Circuit observed in *TCPIP Holding Co.*, brands like Dupont, Buick, and Kodak exemplify the type of famous mark that is entitled to anti-dilution protection.  All of these are "marks that for the major part of the century have been household words throughout the United States.  They are representative of the best known marks in commerce."  *TCPIP Holding Co. v. Haar Commc'ns, Inc.*, 244 F.3d 88, 99 (2d Cir. 2001).[5]  Courts in this district have similarly explained that Section 1125(c) "restrict[s] dilution causes of action to those few truly famous marks like Budweiser beer, Camel cigarettes, Barbie dolls, and the like."  *Luv N' Care Ltd. v. Regent Baby Prods. Corp.*, 841 F. Supp. 2d 753, 758 (S.D.N.Y. 2012).  It is not enough to

---

[5] The "famous" requirement is more exacting today than in 2001, when *TCPIP Holding* was decided.  The Trademark Dilution Revision Act of 2006 made the Act even "more rigorous in its test for 'fame' than was the original 1996 Act."  4 J. McCarthy, *supra*, § 24:104; *see also Luv N' Care*, 841 F. Supp. 2d at 758 (noting that "the TDRA's predecessor, the Federal Trademark Dilution Act of 1995, . . . did not include the requirement that the mark be widely recognized by the general consuming public").  As McCarthy notes, the revised requirement was intended to act "as a potent filter to permit only truly prominent and renowned marks to qualify."  4 J. McCarthy, *supra*, § 24:104.

"have achieved a level of national prominence"; what is required is that the mark sought to be protected from dilution be "so ubiquitous and well-known" that it can "stand toe-to-toe with Buick or Kodak." *Id.* (quoting *Bd. of Regents, Univ. of Tex. Sys. v. KST Elec., Ltd.*, 550 F. Supp. 2d 657, 678 (W.D. Tex. 2008) (internal quotation marks omitted)). "[C]ourts generally have limited famous marks to those that receive multi-million dollar advertising budgets, generate hundreds of millions of dollars in sales annually, and are almost universally recognized by the general public." *Schutte Bagclosures Inc. v. Kwik Lok Corp.*, 48 F. Supp. 3d 675, 702 (S.D.N.Y. 2014).

1.   **Global's Inability to Satisfy The "Famous" Requirement of Section 1125(c) Can and Should Be Decided on a Motion to Dismiss.**

Congress intentionally set a high bar for the showing of "fame" required under the Lanham Act, thereby making dilution claims readily susceptible of determination at the pleading stage. The dilution cause of action provides the owner of a trademark "a far greater scope of exclusivity" than is typically provided by trademark law—it "permits the owner of a qualified, famous mark to enjoin junior uses throughout commerce, regardless of the absence of competition or confusion." *TCPIP Holding Co.*, 244 F.3d at 95. Affording such powerful protection to marks based on anything less than the highest showing of fame "would upset the balance in favor of over-protecting trademarks, at the expense of potential non-infringing uses." *Avery Dennison Corp. v. Sumpton*, 189 F.3d 868, 875 (9th Cir. 1999) (vacating permanent injunction after finding that plaintiff's trademarks were insufficiently famous, and remanding with instructions to enter judgment for defendant); *see TCPIP Holding Co.*, 244 F.3d at 95 (citing *Avery Dennison Corp.* for its "characteriz[ation of] the Dilution Act as coming 'very close to granting rights in gross in a trademark'"). A mark must therefore be "'truly famous' before a court will afford the owner of the mark the 'vast protections' of § 1125(c)." *Joint Stock*

*Co. Channel One Russia Worldwide v. Infomir LLC*, No. 16 Civ. 1318, 2017 WL 696126, at \*22 (S.D.N.Y. Feb. 15, 2017) ("*Channel One*") (quoting *Savin Corp. v. Savin Grp.*, 391 F.3d 439, 449 (2d Cir. 2004)), *report & recommendation adopted sub nom. Joint Stock Co. v. Infomir LLC*, No. 16 Civ. 1318, 2017 WL 2988249 (S.D.N.Y. Mar. 27, 2017).

The standard for "fame" under the Lanham Act is fully compatible with a motion to dismiss on the pleadings.  In order to restrict federal anti-dilution protection to the "truly famous" marks for which it is intended, courts must "be rigorous and demanding" even when "evaluating *allegations* of fame."  4 J. McCarthy, *McCarthy on Trademarks and Unfair Competition*, § 24:104 n.42 (5th ed. 2017) (emphasis added); *see also id.* § 24:104 (explaining that dilution is "an extraordinary remedy" that is to "be used in the rare circumstance and not as the alternative pleading").  As one commentator on the scope of the federal anti-dilution law has written, "if the finder of fact is a long-time resident of the United States and has not heard of the mark or is only vaguely familiar with it, then the mark is probably not 'famous' for purposes of anti[]dilution protection. . . . The TDRA is simply not intended to protect trademarks whose fame is at all in doubt."  Barton Beebe, *A Defense of the New Federal Trademark Antidilution Law,* 16 Fordham Intell. Prop. Media & Ent. L.J. 1143, 1174 n.86 (2006).

Where a plaintiff —like Global—cannot assert facts that would make it *plausible* (not merely "possible," *Iqbal*, 565 U.S. at 678) that its mark is so well-known among "the general consuming public of the United States" (15 U.S.C. § 1125(c)(2)(A)) "so as to at least approach (if not attain) the status [of a] 'household name[,]'" its dilution claim fails at the threshold. *Urban Grp. Exercise Consultants, Ltd. v. Dick's Sporting Goods, Inc.*, No. 12 Civ. 3599, 2013 WL 866867, at \*6 (S.D.N.Y. Mar. 8, 2013).  Faced with similar facts, courts in this district have not hesitated to grant the dismissal of federal dilution claims under 12(b)(6).  *E.g.*, *Helios Intern.*

*S.A.R.L. v. Cantamessa USA, Inc.*, No. 12 Civ. 8205, 2013 WL 3943267, at *10 (S.D.N.Y. July 31, 2013) (holding Cantamessa brand of jewelry not famous and dismissing federal dilution claim under 12(b)(6)); *Boarding Sch. Review, LLC v. Delta Career Educ. Corp.*, No. 11 Civ. 8921, 2013 WL 6670584, at *7 (S.D.N.Y. Mar. 29, 2013) (dismissing federal dilution claim on 12(b)(6) motion where plaintiff failed to plausibly plead famousness of its Delta marks); *Urban Grp. Exercise Consultants,* 2013 WL 866867, at *7 (S.D.N.Y. Mar. 8, 2013) (granting 12(b)(6) motion to dismiss federal dilution claim because plaintiff did not sufficiently allege general consumer recognition of its Urban Rebounder brand); *Luv N' Care, Ltd.*, 841 F. Supp. 2d 753, 759 (S.D.N.Y. 2012) (dismissing federal dilution claim on 12(b)(6) motion based on plaintiff's failure to plead facts making plausible the famousness of its Luv N'Care trademarks).

**2.      Global Fails To Allege Facts That Would Permit The Court To Plausibly Infer That Its XOXO Marks are "Truly Famous."**

Most of Global's allegations intended to satisfy the fame requirement are conclusory. Global asserts, for example, that its XOXO marks are "famous and distinctive," and similarly concludes that "the consuming public" associates Global's XOXO marks "exclusively" with Global's goods and services.  *See* Am. Compl. ¶¶ 2, 18, 21, 58, 59.  These are not facts, but only a restatement of the legal standard required to show "famousness" under Section 1125(c).  That is not enough.  *See Iqbal*, 556 U.S. at 678; *Boarding Sch. Review*, 2013 WL 6670584, at *7 (holding that "general allegations that [marks] have 'fostered wide renown with the trade and public' and have 'great value and secondary meaning among the consuming public' are labels and conclusions not entitled to a presumption of truth");  *Helios Int'l S.A.R.L.*, 2013 WL 3943267, at *10 (dismissing plaintiff's dilution claim where it rested on "conclusory allegation[s] that the Crown Logo and the Cantamessa name are 'famous'").

None of Global's other allegations regarding the supposed "fame" of its XOXO marks are, even if true, enough to salvage its federal trademark dilution claim.

> **i.      Global Alleges That Its Products Are Marketed Toward A Niche Market Of "Young, Fashion-Conscious Women," But Niche Markets Are Not Enough To Show Fame.**

Global admits that "[t]he majority of [its] XOXO-branded products are designed for young women" and that "the staple of the XOXO brand has long been is [*sic*] its enormously popular line of women's apparel, including intimates and lingerie . . . ."  Am. Compl. ¶ 10. Global claims further that its "XOXO brand is truly a lifestyle brand that offers an entire suite of products," while acknowledging that these "many other" products consist of "goods and services" that are "related" to the categories of products it designs for young women: "apparel for fashionable women, toiletries, cosmetics, perfumes, shoes, luggage, [and] eyeglasses[.]"  *Id.* ¶¶ 9-10.  Global directs its promotional efforts toward this target demographic, alleging for example that "[i]n marketing its XOXO-branded products, Global . . . emphasize[s] the feminine [and] fashionable[.]"  *Id.* ¶ 10; *see also id.* ¶ 19 (describing an advertising campaign involving "high fashion models living in a Fifth Avenue storefront display").  Global also contends that its XOXO mark has appeared in "leading mainstream and fashion publications in the U.S., including, for example, Cosmopolitan, Glamour, Seventeen, Latina, Life & Style, and the New York Post," all but the last of which are on their face aimed at women.  *Id.*  The bottom line is that the "target consumers for . . . Global's XOXO goods . . . *[are] young, fashion-conscious women*."  *Id.* ¶ 23 (emphasis added).

Fame among fashion-conscious young women, however, is insufficient to state a claim for federal trademark dilution.  That is because so-called "niche fame," or "fame limited to a particular channel of trade, segment of industry or service, or geographic region" cannot as a matter of law satisfy the requirements of Section 1125(c).  *Luv N' Care*, 841 F. Supp. 2d at 758

(internal citations omitted).  Recognition of the mark "must exist in the general marketplace, not in a niche market."  *Small Bus. Bodyguard, Inc. v. House of Moxie, Inc.*, No. 14 Civ. 7170, 2014 WL 5585339, at *7 (S.D.N.Y. Oct. 30, 2014) (internal citations and quotations omitted).

*Michael Caruso & Co. v. Estefan Enterprises, Inc.*, 994 F. Supp. 1454 (S.D. Fla. 1998), is instructive.  The court there denied a motion for preliminary injunction in a case alleging trademark dilution, noting that the plaintiff—as here, a producer of apparel for young women— could not establish that its mark was "famous," despite being unquestionably well-known to a narrow segment of consumers.  "[W]hile 'Bongo' may be a distinctive mark in the junior women's apparel market," concluded *Caruso*, "it is not a generally famous mark like 'Exxon' and 'Kodak.'"  *Id.* at 1463 (*aff'd sub nom. Caruso v. Estefan*, 166 F.3d 353 (11th Cir. 1998)).  Global likewise fails to allege recognition by "the whole consuming public of all of the United States."  4 J. McCarthy, *supra*, § 24:105 (citing cases).  There is no basis in the Amended Complaint from which it can be plausibly inferred that recognition of XOXO extends beyond a limited segment of the marketplace.  *See, e.g., Helios Int'l S.A.R.L.*, 2013 WL 3943267, at *10 (granting motion to dismiss federal dilution claim where Cantamessa brand of jewelry famous only "among consumers of luxury jewelry"); *Luv N' Care*, 841 F. Supp. 2d at 759 (granting motion to dismiss federal dilution claim where Luv N' Care trademarks not "recognized beyond a niche market, i.e., the baby product market"); *Heller Inc. v. Design Within Reach, Inc.*, No. 09 Civ. 1909, 2009 WL 2486054, at *4 (S.D.N.Y.  Aug. 25, 2007) (granting motion to dismiss federal dilution claim where Bellini Chair trademark famous only among the segment of the consuming "public interested in contemporary furniture").

Nor does Global's allegation that its XOXO-branded goods are distributed and sold "nationwide by prominent retailers" (Am. Compl. ¶ 15) permit the inference that its XOXO mark

is "widely recognized by the general consuming public of the United States[.]"  15 U.S.C.

§ 1125(c)(2)(A).  The allegation of nationwide sales may be a sufficient basis for claiming that

recognition of Global's XOXO mark is not limited to a local *geographic territory*, but it does not

address the other dimension of niche fame: recognition that is limited to a specific segment of the

consuming public (here, fashion-conscious young women).  *See* 4 J. McCarthy, *supra*, § 24:105

(explaining that there are two dimensions of niche fame: "(1) fame in a local territorial area; and

(2) fame only within a particular line of product or services").[6]

### ii.  Global's "Hundreds Of Millions Of Dollars In Wholesale Sales" Over The Course Of 26 Years Is Insufficient To Show That Its Mark Is "Famous."

Famous marks are limited to those that "generate hundreds of millions of dollars in sales

*annually*."  *Channel One*, 2017 WL 696126, at \*23 (emphasis added); *see Bd. of Regents v. KST*

*Elec., Ltd.*, 550 F. Supp. 2d 657, 678 (W.D. Tex. 2008) (University of Texas Longhorn logo not

famous despite retail sales in stores such as Target and Wal-Mart totaling nearly $400 million in

a single year).  Global alleges merely that "[s]ince 1991"—meaning over the course of more than

a quarter century—it has "made hundreds of millions of dollars in wholesale sales of goods

bearing the XOXO Trademarks."  Am. Compl. ¶ 16.  Global does not specify what it means by

"hundreds of millions of dollars" in sales, but even assuming the figure were as high as $500

million, that still averages less than $20 million per year.  That is an insufficient amount.  *See*

*Channel One*, 2017 WL 696126, at \*23.

---

[6] Separately, the alleged fact that XOXO products are sold at retailers such as Target, Macy's, CVS, and Amazon.com cannot make the XOXO mark "famous."  Were it otherwise, any of the millions of brands collectively sold by these giant retailers would be able to plausibly allege "fame" under the Lanham Act.  That is not the law.  *See Avery Dennison Corp.*, 189 F.3d at 875 (observing that the dilution cause of action was "invented and reserved for a select class of marks—those marks with such powerful consumer associations that even non-competing uses can impinge on their value").

Global's allegations are also too vague.  The court in *Luv N' Care* concluded on a motion to dismiss that a similar allegation—*i.e.*, that the plaintiff had "generated hundreds of millions of dollars in revenue from the sale of goods under their trademarks"—did not support the plaintiff's claim that its marks were "famous."  841 F. Supp. 2d at 757.  Citing 15 U.S.C. § 1125(c)(2)(A)(ii), which asks courts to consider "[t]he amount, volume, and geographic extent of sales of goods or services offered under the mark," *Luv N' Care* stated that the allegation before it failed to specify "the amount, volume, and geographic extent of sales of [the various] goods."  841 F. Supp. 2d at 757.  In other words, the court found that a vague allegation of "hundreds of millions" in sales could not support a finding of "fame" under factor (ii) of the TDRA.  The same reasoning applies here to Global's claim that it has "made hundreds of millions of dollars in wholesale sales."

### iii.   Global's Allegation That it Spent "Millions of Dollars" to Increase Consumer Recognition is Not Enough to Plead Fame.

Global claims to have invested "millions of dollars" over the course of two-and-a-half decades "to create consumer recognition in the XOXO Trademarks."  Am. Compl. ¶ 18.  This allegation does not provide a basis, however, to permit the "infer[ence] that the advertising and publicity of the mark has had such an impact on the public mind of the 'general consuming public of the United States'" so as to make plausible the label "famous."  4 J. McCarthy, *supra*, § 24:106.  The court in *Boarding School Review* dismissed a counterclaim for dilution where the defendants pled only that they had invested "'enormous' sums of money in marketing."  2013 WL 6670584 at *7.   Global's similarly vague allegation of "millions of dollars" spent "to create consumer recognition" is insufficient to satisfy the famousness element.  *See also TCPIP Holding Co.*, 244 F.3d at 99-100 (holding "tens of millions" of dollars spent on advertising insufficient to show "fame").

11

The allegation that "[a]dvertisements, news articles and editorials featuring the XOXO Trademarks have appeared in leading mainstream and fashion publications in the U.S.," such as "Cosmopolitan, Glamour, Seventeen, Latina, Life & Style, and the New York Post" also fails to salvage Global's claim.  Am. Compl. ¶ 19.  Courts in this district have found more extensive publicity efforts insufficient to allege "fame" at the motion-to-dismiss stage.  The plaintiff in *Urban Group Exercise*, for example, alleged that: (1) the advertising spend for the "Urban Rebounder" topped $4.8 million in a single year; (2) the "Urban Rebounder" trade dress had been featured on "several notable television networks such as NBC, CNBC, FitTV, QVC, CNN, NY1, Lifetime, Headline News, Home and Garden Television (HGTV) as well as . . . on The Today Show and The View"; and (3) the "Urban Rebounder" had "been advertised and depicted in . . . Allure, Fit, Home and Garden, Style Magazine, The New York Daily News, U.S. Today, and Upscale Magazine."  2013 WL 866867, at *2.  The court nevertheless found that the plaintiff's allegations of "extensive overall sales and advertising for [the] product line" were insufficient to establish the required level of general public recognition and granted defendant's motion to dismiss plaintiff's federal trademark dilution claim with prejudice.  *Id.* at *6.

### iv.   Global's Registration And Purportedly Continuous Use Of The XOXO Mark Are Insufficient To Adequately Allege Fame.

The absence of a trademark registration may be sufficient to infer the absence of fame. The opposite inference, however—that trademark registration is capable of *proving* fame—does not hold.  "One cannot logically infer fame from the fact that a mark is one of the millions on the Federal Register."  J. McCarthy, *supra*, at §24:106; *see Coach Servs., Inc. v. Triumph Learning, LLC*, 668 F.3d 1356, 1374 (Fed. Cir. 2012) ("[P]roof of registration is not conclusive evidence of fame.").  Global's registrations are not enough to show that XOXO is famous within the meaning of Section 1125(c).

Nor does the allegation that Global has made continuous use of the XOXO mark since 1991 (Am. Compl. ¶ 9) provide a sufficient basis from which to plausibly infer the mark's fame. The court in *Boarding School Review* dismissed a counterclaim for dilution even though the defendants had "one subsidiary that ha[d] operated for more than 100 years."  2013 WL 6670584, at *7.  That claim alone did not "make it plausible that Defendants' Marks are truly famous to the general consuming public of the United States."  *Id.*; *see also Maker's Mark Distillery, Inc. v. Diageo N. Am., Inc.*, 703 F. Supp. 2d 671, 689 (W.D. Ky. 2010) (red dripping wax seal insufficiently "famous" to support a dilution claim despite over 50 years of use).

**B.    GLOBAL'S STATE LAW DILUTION CLAIM IS BARRED BY SECTION § 1125(C)(6).**

As the heading of 15 U.S.C. § 1125(c)(6) makes clear, a federal registration serves as "a complete bar to action[s]" under state anti-dilution law.  That Section provides further:

> The ownership by a person of a valid registration . . . on the principal register under this chapter shall be a complete bar to an action against that person, with respect to that mark, that—(A) is brought by another person under the common law or a statute of a State; and (B) (i) seeks to prevent dilution by blurring or dilution by tarnishment; or (ii) asserts any claim of actual or likely damage or harm to the distinctiveness or reputation of a mark, label, or form of advertisement.

15 U.S.C. § 1125(c)(6).  *See also* 4 J. McCarthy, *supra*, § 24:80 ("Under both the 1996 and 2006 federal antidilution laws, it is clear that a federal registration is a complete defense to a charge under a state antidilution law.").

In its newly asserted New York-law claim for dilution, Global contends that Church & Dwight's use of XOXO by Trojan in connection with condoms has "created and continue[s] to create a likelihood of injury to Global's image and reputation for the provision and sale of authentic goods, dilute the distinctive quality of the XOXO Trademarks, and tarnish the reputation of the XOXO Trademarks through unsavory or unflattering associations with those

goods by consumers[.]"  Am. Compl.  ¶ 76.  In other words, Global is bringing an action under

the laws of New York state "seek[ing] to prevent dilution by blurring or dilution by tarnishment"

and "assert[ing] a[] claim of actual or likely damage or harm to the distinctiveness or reputation

of a mark[.]"  15 U.S.C. § 1125(c)(6)(B)(i)-(ii).  It is undisputed that Church & Dwight is the

owner of federal trademark registration for XOXO for Condoms (U.S. Reg. No. 5,242,035),

however.  Am. Compl.  ¶ 67.  Indeed, Global attached a copy of Church & Dwight's registration

certificate as Exhibit C to the Amended Complaint.  Am. Compl., Ex. C (pp. 36-37).  Global's

dilution claim under New York General Business Law § 360-l is therefore prohibited by the clear

language of the Lanham Act.  15 U.S.C. § 1125(c)(6) ("[O]wnership . . . of a valid registration . .

. shall be a complete bar to an action" that is brought "under . . . a statute of a State . . . to prevent

dilution[.]").  *See, e.g., New Jersey Physicians United Reciprocal Exchange v. Privilege*, No. 15

Civ. No. 6911, 2016 WL 6126914, at *5 (D.N.J. Oct. 18, 2016) (dismissing plaintiff's state law

claim for dilution under § 1125(c)(6) based on defendant's federal trademark registration);

*Westchester Media Co. v. PRL USA Holdings, Inc.,* 103 F. Supp. 2d 935, 977 (S.D. Tex. 1999),

*vacated in part on other grounds*,  *Westchester Media Co. v. PRL USA Holdings, Inc*., 214 F.3d

658 (5th Cir. 2000) (defendant's state dilution counterclaim was barred due to the plaintiffs'

federal registration of the mark at issue, POLO).

      **1.**        **<u>Cases Holding That a Federal Registration is Not a Basis for</u>**
**<u>Dismissal of a State Law-Based Dilution Claim Are Incompatible</u>**
**<u>With the Language, Purpose, and Intent of the Lanham Act.</u>**

What limited authority exists suggesting that Section 1125(c)(6) is somehow inapplicable

if a complaint contains a claim for cancellation of the federal registration at issue is simply

wrong.[7]   It runs contrary to the language of the statute, the legislative intent behind its creation, and frustrates the broader purposes of the Lanham Act.

The plain language of Section 1125(c)(6) provides, "ownership by a person of a valid registration . . . shall be *a complete bar* to an action . . . under the common law or a statute of a State . . . seek[ing] to prevent dilution."  15 U.S.C. § 1125(c)(6) (emphasis added).  This means that "[i]f a party asserts a dilution claim against one who owns a federally registered mark, it *must* proceed under the federal dilution statute."  *Westchester Media Co.*, 103 F. Supp. 2d at 977 (emphasis added).  This is precisely as Congress intended.  Section 1125(c)(6), "[a]s originally drafted in the House of Representatives, . . . was designed to encourage Federal registration of trademarks, a worthy policy goal that prevents state laws from interfering with federally-protected marks and ensures that registered marks are protected nationwide."  212 H.R. Rep. No. 112-647, at 3 (2012); *see also* H.R. Rep. No. 104–374, at 7 (1995) (the "complete bar" to state-law dilution actions "provides a further incentive for the federal registration of marks and recognizes that to permit a state to regulate the use of federally registered marks is inconsistent with the intent of the Lanham Act").  The provision "promoted this goal by barring a state action for dilution against a federally-registered mark."  212 H.R. Rep. No. 112-647, at 3 (2012).  As Congress has made its intent clear, the court "must give effect to that intent."  *Miller v. French*, 530 U.S. 327, 336 (2000).  Allowing state-law dilution claims to proceed against owners of federally registered marks any time a plaintiff includes a claim for cancellation in its pleading would permit easy circumvention of the protections the statute was designed to provide.

---

[7] *See, e.g.*, *Jada Toys, Inc. v. Mattel, Inc.*, 518 F.3d 628, 634 n.4 (9th Cir. 2008) ("Jada's claim that its HOT RIGZ registration acts as a bar to Mattel's state law claim is misplaced because Mattel's eighth counterclaim is for cancellation of the HOT RIGZ registration . . . . [I]f Mattel can succeed in obtaining that cancellation, the bar to state unfair competition actions found in 15 U.S.C. § 1125(c)(6) will be inapplicable.").

Global did not oppose Church & Dwight's trademark application for the XOXO mark for condoms, and the mark was registered.  As a result, Global's state-law dilution claim is barred.

### C.  GLOBAL SHOULD NOT BE GRANTED LEAVE TO AMEND ITS PLEADING.

"[W]here a plaintiff is on notice of deficiencies in an initial pleading and has had the opportunity to cure them by a first amendment, dismissal with prejudice is proper when a complaint previously has been amended."  *Urban Grp. Exercise Consultants, Ltd.*, 2013 WL 866867, at *7 (citing *Dietrich v. Bauer*, 76 F. Supp. 2d 312, 351 (S.D.N.Y. 1999)).  Global filed its Amended Complaint after all briefing on Church & Dwight's motion to dismiss Global's original Complaint had been submitted.  *See* Dkt. 16-20; 24-25.  It was therefore on notice and could have supplemented the factual allegations in its pleading to address the deficiencies in its claim for federal trademark dilution raised in Church & Dwight's motion.  It chose not to do so, and that deficiency is fatal.

## VI.   <u>CONCLUSION</u>

For all of the foregoing reasons, Church & Dwight requests that the Court dismiss

Global's federal and state-law trademark dilution claims with prejudice.


Dated: November 6, 2017                                   PROSKAUER ROSE LLP

By: */s/ Brendan J. O'Rourke*
Brendan J. O'Rourke
Lee M. Popkin
Tiffany M. Woo
Eleven Times Square
New York, NY  10036-8299
Tel.: (212) 969-3000
borourke@proskauer.com
lpopkin@proskauer.com
twoo@proskauer.com

*Attorneys for Defendant*

17