Louis S. Ederer
louis.ederer@apks.com
Matthew T. Salzmann
matthew.salzmann@apks.com
Maxwell C. Preston
maxwell.preston@apks.com
Harry K. Fidler
harry.fidler@apks.com
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, New York 10019-9710
Phone: (212) 836-8000
Fax: (212) 836-8689

*Attorneys for Plaintiff*
*Global Brand Holdings, LLC*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------ x

GLOBAL BRAND HOLDINGS, LLC,

             Plaintiff,

        - against -

CHURCH & DWIGHT CO., INC.,

            Defendant.

------------------------------------------------------------ x

Civil Action No. 1:17-cv-06571-KBF

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO**
**DISMISS PLAINTIFF'S TRADEMARK DILUTION CLAIMS**

# TABLE OF CONTENTS

I.   PRELIMINARY STATEMENT ........................................................................... 1

II.  STATEMENT OF FACTS AND PRIOR PROCEEDINGS ............................... 2

    A.   RELEVANT ALLEGED FACTS........................................................... 2

    B.   PROCEDURAL HISTORY.................................................................... 4

III. STANDARD OF REVIEW .............................................................................. 5

IV.  ARGUMENT .................................................................................................. 6

    A.   GLOBAL'S FAC STATES A PLAUSIBLE CLAIM FOR FEDERAL
        TRADEMARK DILUTION ................................................................... 6

        1.   *Global's FAC Alleges More Than Enough Facts To Permit A
            Plausible Inference That Its XOXO Mark Is Famous* ................................ 8

        2.   *Global's FAC Does Not Allege Niche Fame, But Rather That
            Its XOXO Mark Is Famous Nationwide* .................................... 12

    B.   TO THE EXTENT THE COURT GRANTS C&D'S MOTION,
        GLOBAL SHOULD BE GRANTED LEAVE TO REPLEAD ........................... 17

    C.   GLOBAL'S FAC STATES A PLAUSIBLE CLAIM FOR
        TRADEMARK DILUTION UNDER NEW YORK STATE LAW ................... 18

V.   CONCLUSION.............................................................................................. 23

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...................................................................8

*A.V.E.L.A., Inc. v. Estate of Marilyn Monroe, LLC*,
    131 F. Supp. 3d 196 (S.D.N.Y. 2015) ...........................................................6, 11, 12

*Bell Atl. v. Twombly*, 550 U.S. 544 (2007) ...........................................................5

*Blue Tree Hotels Inv. (Canada) Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*,
    369 F.3d 212 (2d Cir. 2004)...........................................................................5

*Bd. of Regents v. KST Elec., Ltd.*,
    550 F. Supp. 2d 657 (W.D. Tex. 2008).........................................................7, 13

*Boarding Sch. Review, LLC v. Delta Career Educ. Corp.*,
    No. 11-cv-8921, 2013 WL 6670584 (S.D.N.Y. Mar. 29, 2013)...................7

*Buc-ee's, Ltd. v. Panjwani*,
    No. 4:15-CV-03704, 2017 WL 4221461 (S.D. Tex. Sept. 21, 2017)................20, 21

*Coach Servs., Inc. v. Triumph Learning, LLC*,
    668 F.3d 1356 (Fed. Cir. 2012).....................................................................7

*Corley v. U.S.*, 556 U.S. 303 (2009) .....................................................................22

*Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42 (2d Cir. 1991) ..........................17

*Cnty. of Suffolk, N.Y. v. First Am. Real Estate Solutions*,
    261 F.3d 179 (2d Cir. 2001)...........................................................................5

*Erickson Beamon Ltd. v. CMG Worldwide, Inc.*,
    No. 12 Civ. 5105, 2014 WL 3950897 (S.D.N.Y. Aug. 13, 2014) ...............10, 11, 12

*George Nelson Found. v. Modernica, Inc.*,
    12 F. Supp. 3d 635 (S.D.N.Y. 2014)............................................... *passim*

*GMA Accessories, Inc. v. Idea Nuova, Inc.*,
    157 F. Supp. 2d 234 (S.D.N.Y. 2000)...........................................................11, 12

*Grand v. Schwarz*,
    No. 15 Civ. 8779, 2016 WL 2733133 (S.D.N.Y. May 10, 2016).......................8, 10

*Helios Int'l S.A.R.L. v. Cantamessa USA, Inc.*,
    No. 12 Civ. 8205, 2013 WL 3943267 (S.D.N.Y. July 31, 2013) ..................................5, 15, 16

*Heller Inc. v. Design Within Reach, Inc.*,
    No. 09 Civ. 1909, 2009 WL 2486054 (S.D.N.Y. Aug. 14, 2009) ....................................15, 16

*Holloway v. King*, 161 F. App'x 122 (2d Cir. 2005) ........................................................................5

*Jada Toys, Inc. v. Mattel, Inc.*,
    518 F.3d 628 (9th Cir. 2008) ..........................................................................................20, 21

*Jet, Inc. v. Sewage Aeration Sys.*,
    165 F.3d 419 (6th Cir. 1999) ................................................................................................20

*Joint Stock Co. Channel One Russia Worldwide v. Infomir LLC*,
    No. 16-cv-1318, 2017 WL 696126 (S.D.N.Y. Feb. 15, 2017) ...........................................7, 13

*Lawrence + Mem'l Hosp. v. Burwell*,
    812 F.3d 257 (2d Cir. 2016)..................................................................................................22

*Lewittes v. Cohen*,
    No. 03 Civ. 189, 2004 WL 1171261 (S.D.N.Y. May 26, 2004)........................................11, 12

*Lovetap, LLC v. CVS Health Corp.*,
    No. 1:16-CV-3530-TWT, 2017 WL 3250374 (N.D. Ga. July 31, 2017) ....................... *passim*

*Luv N' Care, Ltd. v. Regent Baby Products Corp.*,
    841 F. Supp. 2d 753 (S.D.N.Y. 2012)............................................................................ *passim*

*Maker's Mark Distillery, Inc. v. Diageo N. Am., Inc.*,
    703 F. Supp. 2d (W.D. Ky. 2010) ............................................................................................7

*Michael Caruso & Co. v. Estefan Enterprises, Inc.*,
    994 F. Supp. 1454 (S.D. Fla. 1998) ......................................................................................15

*Mister Softee, Inc. v. Marerro*,
    No. 04 Civ. 4011, 2004 WL 2368009 (S.D.N.Y. Oct. 21, 2004) ......................................11, 12

*N.J. Physicians United Reciprocal Exch. v. Privilege*,
    No. 15-cv-6911, 2016 WL 6126914 (D. N.J. Oct. 18, 2016) ..................................................21

*Romeo & Juliette Laser Hair Removal, Inc. v. Assara I LLC*,
    No. 08 Civ. 442, 2014 WL 4723299 (S.D.N.Y. Sept. 23, 2014)........................................11, 12

*Schutte Bagclosures Inc. v. Kwik Lok Corp.*,
    48 F. Supp. 3d 675 (S.D.N.Y. 2014).....................................................................................13

*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002).........................................................................5

*TCPIP Holding Co., Inc. v. Haar Commc'ns, Inc.*,
   244 F.3d 88 (2d Cir. 2001).....................................................................................................7

*Under Armour, Inc. v. Body Armor Nutrition, LLC*,
   No. CIV. JKB-12-1283, 2013 WL 5375444 (D. Md. Aug. 23, 2013)..................................21

*Urban Group Exercise Consultants, Ltd. v. Dick's Sporting Goods, Inc.*,
   No. 12 CIV. 3599, 2013 WL 866867 (S.D.N.Y. Mar. 8, 2013) ..........................................13

*Viacom Inc. v. Ingram Enters.*,
   141 F.3d 886 (8th Cir. 1998) ...............................................................................................20

*Villager Pond, Inc. v. Town of Darien*,
   56 F.3d 375 (2d Cir. 1995), *cert denied*, 519 U.S. 808 (1996).................................................5

*V.V.V. & Sons Edible Oils Ltd. v. Meenakshi Overseas LLC*,
   No. 2:14-cv-02961-TLN-CKD, 2016 WL 1268008 (E.D. Cal. Mar. 31, 2016)....................20

*Wellnx Life Scis. Inc. v. Iovate Health Scis. Research Inc.*,
   516 F. Supp. 2d 270 (S.D.N.Y. 2007).....................................................................................5

*Westchester Media Co. v. PRL USA Holdings, Inc.*,
   103 F. Supp. 2d 935 (S.D. Tex. 1999) ...................................................................................21

## OTHER AUTHORITIES

15 U.S.C. § 1125(c)(2)...................................................................................................................8

15 U.S.C. § 1125(c)(6).........................................................................................18, 19, 20, 22

Fed. R. Civ. P. 8(a)(2).............................................................................................................5, 6

Fed. R. Civ. P. 12(b)(6).............................................................................................................4, 5

Fed. R. Civ. P. 15(a)(3)................................................................................................................17

## I.      PRELIMINARY STATEMENT

Defendant Church & Dwight Co., Inc. ("C&D")'s motion to dismiss asks this Court to peer ahead at the pleading stage, and decide the ultimate merits of plaintiff Global Brand Holdings, LLC ("Global")'s federal trademark dilution claim based only on Global's First Amended Complaint ("FAC").  The inquiry C&D advances is wholly inappropriate at this stage, in which Global is required only to allege facts sufficient to state a plausible claim for dilution — which is precisely what its FAC does.  The issue presently before the Court is *not* whether Global's XOXO mark is in fact "truly famous", but rather whether Global's FAC alleges facts sufficient to plausibly support such a finding, thus entitling Global the opportunity to prove its claim.  As demonstrated below, Global's FAC more than meets this minimal, threshold pleading requirement, and it would be entirely improper for the Court to weigh the evidence that Global might present at trial at this early pleading stage.

Indeed, on closer examination, C&D's motion challenges only the sufficiency of Global's federal dilution claim in one respect — the allegations concerning the fame of Global's XOXO mark.  C&D's argument, however, ignores a number of specific factual allegations in Global's FAC which go directly to the fame of Global's XOXO mark, and more than support a plausible inference that Global's XOXO mark has achieved nationwide recognition by the general consuming public.  As explained below, the very cases C&D cites in its own Memorandum of Law support the denial of its motion.

With respect to Global's dilution claim under Section 360-l of the General Business Law of the State of New York, C&D does not challenge the sufficiency of Global's pleading, but rather contends that Global's claim is statutorily barred by C&D's ownership of a federal trademark registration for the allegedly diluting mark.  The statutory bar on which C&D relies, however, applies only to "valid" registrations, and Global disputes the validity of C&D's XOXO

1

registration, and has made that registration the subject of its well-pleaded cancellation claim. Thus, it would be improper to apply the statutory bar at this early stage, when C&D's registration may well be invalidated in the litigation.

Accordingly, C&D's motion to dismiss Global's claims for federal trademark dilution (Fifth Claim for Relief) and dilution under Section 360-l of the General Business Law of the State New York (Seventh Claim for Relief) should be denied in all respects.

## II.      STATEMENT OF FACTS AND PRIOR PROCEEDINGS

### A.      RELEVANT ALLEGED FACTS

The following facts are alleged in the noted paragraphs of Global's FAC, and for purposes of C&D's motion must be taken as true.

Since 1991, Global, its predecessors-in-interest, and its authorized licensees have been selling an expansive array of apparel, toiletries, cosmetics, accessories, and related goods marketed and sold under a family of trademarks consisting of or including the XOXO mark. FAC ¶¶ 3, 9.  Global is the owner of numerous trademarks that consist of or include the XOXO mark, many of which are registered with the U.S. Patent and Trademark Office for use in connection with a variety of goods and services.  *Id*. ¶¶ 11, 12.  These federal registrations are in full force and effect, and many have achieved incontestable status.  *Id*. ¶ 13.

While the staple of the XOXO brand has long been its enormously popular line of women's apparel, including intimates and lingerie, Global's XOXO brand is truly a lifestyle brand that offers an entire suite of goods under Global's XOXO mark.  *Id*. ¶ 10.  Goods bearing Global's XOXO mark are distributed and sold nationwide by prominent brick and mortar and ecommerce retailers including, for example, Target, Macy's, JC Penney, Boscov's, Walmart, CVS, Walgreens, Amazon.com, Perfumania.com, and Jet.com.  *Id*. ¶ 15.  Global, its

predecessors-in-interest, and its authorized licensees have made hundreds of millions of dollars in wholesale sales of goods bearing the XOXO mark. *Id.* ¶ 16.

Global and its authorized licensees have also invested millions of dollars and decades of time and effort to create consumer recognition in the XOXO trademark, including through advertisements and editorials featuring the XOXO mark in leading mainstream and fashion publications in the United States. *Id.* ¶¶ 18, 19.  For example, goods bearing and sold under the XOXO mark have been featured in leading publications such as Cosmopolitan, Glamour, Seventeen, Latina, Life & Style, and the New York Post. *Id.* ¶ 19.  In addition, the XOXO brand received significant media attention in connection with an advertising campaign featuring high fashion models living in a Fifth Avenue storefront display for several days, as well as for its use of some of the most iconic models in history, including Tyra Banks, Christy Turlington, Claudia Schiffer, Miranda Kerr, and Chrissy Teigen. *Id.* ¶¶ 19, 20.

C&D, rather than going to the effort and expense of creating and developing its own unique, source-identifying trademark, not only knowingly adopted Global's XOXO mark in launching a line of condoms, but replicated the manner in which Global typically presents its XOXO mark to consumers. *Id.* ¶¶ 22, 25.  As a result, consumers are likely to believe that C&D's condoms bearing the infringing XOXO mark are authorized, sponsored, approved, endorsed, or licensed by Global, or are in some other way affiliated, associated, or connected with Global. *Id.* ¶ 27.  Such unauthorized use of the XOXO mark in connection with condoms is likely to dilute the distinctive qualities of the XOXO mark and tarnish the reputation of the XOXO mark through unsavory or unflattering associations with those goods by consumers. *Id.* ¶¶ 61, 62.

To make matters worse, C&D wrongly persuaded the U.S. Patent and Trademark Office to register C&D's infringing XOXO word mark for condoms.  *Id.* ¶ 67.  In view of the likelihood of confusion and dilution created by this infringing mark, Global is being harmed by C&D's XOXO registration.  *Id.* ¶ 71.  Accordingly, Global has asserted a claim challenging the validity of C&D's registration for its XOXO mark and seeking its cancellation.  *Id.* ¶¶ 66-72.

### B.   PROCEDURAL HISTORY

Global filed its original Complaint on August 29, 2017.  Dkt. 1.  Global's original Complaint asserted claims against C&D for (1) trademark infringement under the Lanham Act (15 U.S.C. § 1114); (2) false designation of origin under the Lanham Act (15 U.S.C. § 1125(a)); (3) trademark infringement under New York common law; (4) unfair competition under New York common law; (5) trademark dilution under the Lanham Act (15 U.S.C. § 1125(c)); and (6) cancellation of C&D's U.S. Trademark Registration No. 5,242,035 based on likelihood of confusion with and/or dilution of Global's XOXO mark (15 U.S.C. §§ 1064, 1119).

On October 4, 2017, C&D filed a motion to dismiss Global's federal dilution claim under Federal Rule of Civil Procedure 12(b)(6) (Dkt. 17), and on the same date filed an answer to the remaining counts of the Complaint (Dkt. 21).  Global filed its opposition to C&D's motion on October 18, 2017 (Dkt. 24), and C&D filed its reply on October 25, 2017 (Dkt. 25).

That same day (October 25, 2017), Global filed its FAC.  Dkt. 26.  Global's FAC did not change any of the material allegations supporting its federal dilution claim, but did add a claim for trademark dilution under Section 360-l of the General Business Law of the State of New York.  Thereafter, on October 30, 2017, the Court denied C&D's initial motion to dismiss Global's federal dilution claim as moot.  Dkt. 29.  On November 6, 2017, C&D filed this new motion to dismiss Global's federal and state dilution claims under Federal Rule of Civil

Procedure 12(b)(6).  Dkt. 35.  C&D's new motion seeks dismissal only of Global's federal and state dilution claims, and does not challenge any of Global's other claims for relief.

## III.    STANDARD OF REVIEW

There is no heightened pleading requirement for a Lanham Act claim.  *See, e.g.*, *Wellnx Life Scis. Inc. v. Iovate Health Scis. Research Inc.*, 516 F. Supp. 2d 270, 283 n.2 (S.D.N.Y. 2007) (collecting cases).  The Federal Rules of Civil Procedure merely require that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief".  Fed. R. Civ. P. 8(a)(2).  "This is not intended to be an onerous burden, as plaintiffs need only allege facts sufficient in order to 'nudge [ ] their claims across the line from conceivable to plausible'".  *Helios Int'l S.A.R.L. v. Cantamessa USA, Inc.*, No. 12 Civ. 8205, 2013 WL 3943267, at *2 (S.D.N.Y. July 31, 2013) (quoting *Bell Atl. v. Twombly*, 550 U.S. 544, 570 (2007)).

In considering C&D's Rule 12(b)(6) motion, the Court must accept as true all factual allegations in Global's FAC, and draw all reasonable inferences in Global's favor.  *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 n.1 (2002); *Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 217 (2d Cir. 2004).  Further, it is axiomatic that the Court's function in considering C&D's motion is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient".  *Holloway v. King*, 161 F. App'x 122, 124 (2d Cir. 2005) (internal quotation marks omitted).  Therefore, "the issue is not whether [Global] will ultimately prevail but whether [Global] is entitled to offer evidence to support the claims".  *Cnty. of Suffolk, N.Y. v. First Am. Real Estate Solutions*, 261 F.3d 179, 187 (2d Cir. 2001) (quoting *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir. 1995), *cert denied*, 519 U.S. 808 (1996)).

## IV.     ARGUMENT

### A.     GLOBAL'S FAC STATES A PLAUSIBLE CLAIM FOR FEDERAL TRADEMARK DILUTION

Global's federal dilution allegations more than meet the minimal pleading requirements imposed by Rule 8(a)(2), and Global should be afforded the opportunity to offer evidence to support its federal dilution claim.  A claim for trademark dilution under Section 43(c) of the Lanham Act requires allegations that (i) plaintiff's mark is famous; (ii) defendant's use of the mark is made in commerce; (iii) defendant used the mark after plaintiff's mark became famous; and (iv) defendant's use of the mark is likely to dilute the quality of plaintiff's mark by blurring or tarnishment.  *A.V.E.L.A., Inc. v. Estate of Marilyn Monroe, LLC*, 131 F. Supp. 3d 196, 211 (S.D.N.Y. 2015) (internal citations omitted).  C&D's motion does not contest the sufficiency of Global's allegations with respect to any of the above elements except the first — the fame of Global's XOXO mark — claiming that Global's allegations of fame are insufficient as a matter of law.  *See* Dkt. 35 at 9-18.

Although C&D had the opportunity to correct the flaws of its original motion to dismiss, C&D's renewed motion continues to conflate the Court's current task (evaluating the sufficiency of Global's pleading) with an ultimate determination on the merits as to whether Global's XOXO mark is famous.  In addition to citing several marks that have been found to be famous on their merits and implying that the Court should improperly compare those marks to Global's XOXO mark, C&D brazenly suggests that this Court could decide now whether Global's XOXO mark is famous — without any evidentiary presentations — merely by considering whether, as "a long-time resident of the United States", the Court "has not heard of the mark or is only vaguely familiar with it".  Dkt. 35 at 9-11.  That, however, is not the Court's task at this stage of the case;

rather, its only task on this motion is to determine whether it is plausible, from the facts alleged in Global's FAC, that Global's XOXO mark may be proven at trial to be famous.  *See supra* at 5.

In any event, Global's factual allegations relating to the fame of Global's XOXO mark are more than sufficient.  In an apparent attempt to obscure the extent of Global's allegations, C&D addresses each factual allegation separately, as if Global's allegations supporting the fame of its XOXO mark were limited solely to: (i) Global's hundreds of millions of dollars of sales of goods bearing the XOXO mark; or (ii) the millions of dollars it spent on advertising and promoting the XOXO mark; or (iii) its trademark registrations for the XOXO mark.  Dkt. 35 at 15-18.  For example, C&D argues that a large amount of sales is insufficient to prove fame,[1] fame is not sufficiently pleaded if a plaintiff has "pled only" extensive marketing,[2] and that Global's registration and continuous use of its mark is "not enough to show that XOXO is famous".[3]  Of course, these arguments and the cases C&D cites are entirely irrelevant, as the sufficiency of Global's pleading should be evaluated by considering ***the entirety of its FAC***, rather than merely focusing on individual paragraphs.  Moreover, C&D's attack on the strawman of "niche fame" is irrelevant, as C&D itself conceded in earlier briefing that Global has *never* alleged niche fame.  Dkt. 25 at 9 (admitting that "Global did not specifically allege recognition of its product was limited to young, fashion-conscious women").  The Court should not be fooled

---

[1] Dkt. 35 at 15-16 (citing *Luv N' Care, Ltd. v. Regent Baby Prods. Corp.*, 841 F. Supp. 2d 753 (S.D.N.Y. 2012); *Joint Stock Co. Channel One Russia Worldwide v. Infomir LLC*, No. 16-cv-1318, 2017 WL 696126 (S.D.N.Y. Feb. 15, 2017) ("*Channel One*"); and *Bd. of Regents v. KST Elec., Ltd.*, 550 F. Supp. 2d 657 (W.D. Tex. 2008)).

[2] Dkt. 35 at 16 (citing *TCPIP Holding Co., Inc. v. Haar Commc'ns, Inc.*, 244 F.3d 88 (2d Cir. 2001) and *Boarding Sch. Review, LLC v. Delta Career Educ. Corp.*, No. 11-cv-8921, 2013 WL 6670584 (S.D.N.Y. Mar. 29, 2013)).

[3] Dkt. 35 at 17-18 (citing *Coach Servs., Inc. v. Triumph Learning, LLC*, 668 F.3d 1356 (Fed. Cir. 2012); *Boarding Sch. Review*, 2013 WL 6670584; and *Maker's Mark Distillery, Inc. v. Diageo N. Am., Inc.*, 703 F. Supp. 2d (W.D. Ky. 2010)).

by C&D's games.  As discussed below, Global has pleaded more than sufficient facts to support the plausibility of the fame of its XOXO mark.

### 1. *Global's FAC Alleges More Than Enough Facts To Permit A Plausible Inference That Its XOXO Mark Is Famous*

The 2006 Trademark Dilution Revisions Act defines a mark as "famous" if it is "widely recognized by the general consuming public of the United States".  15 U.S.C. § 1125(c)(2).  At the pleading stage, however, Global is not required to *prove* that its XOXO mark is famous, but only to *allege* sufficient facts permitting a plausible inference that its XOXO mark is so "widely recognized".  *See, e.g.*, *Grand v. Schwarz*, No. 15 Civ. 8779, 2016 WL 2733133, at *5 (S.D.N.Y. May 10, 2016) ("Although it is unclear whether Plaintiff will ultimately be able to prevail on his trademark dilution claim, Plaintiff has pleaded sufficient facts to defeat Defendant's Motion to Dismiss".).  Global's FAC does just that, and then some.

The Lanham Act identifies four non-exclusive factors that a court may consider in determining whether a mark is famous: "(i) the duration, extent, and geographic reach of advertising and publicity of the mark, whether advertised or publicized by the owner or third parties; (ii) the amount, volume, and geographic extent of sales of goods or services offered under the mark; (iii) the extent of actual recognition of the mark; and (iv) whether the mark was registered".  15 U.S.C. § 1125(c)(2)(A)(i)-(iv).  While the factual allegations in Global's FAC that support a plausible inference that the XOXO mark is famous generally fall into these categories, they are not "conclusory" or mere restatements of the legal standard under *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), as C&D contends.  Dkt. 35 at 12.

Under *Iqbal*, the restatement of a legal standard is conceptualized as an "unadorned, the-defendant-unlawfully-harmed-me accusation".  *Iqbal*, 556 U.S. at 678 (internal citation omitted). Here, Global's FAC does the opposite of such an "unadorned accusation", by providing "further

factual enhancement" to support Global's claim that its XOXO mark is famous.  *See id*. (internal

citation omitted).  In particular, Global's FAC specifically alleges that:

- The XOXO mark is federally registered in numerous classes for various goods and services, and has been in use for over a quarter century (FAC ¶¶ 9, 11-14);

- A wide variety of goods bearing the XOXO mark — including, without limitation, apparel, intimates and lingerie, toiletries, cosmetics, perfumes, shoes, luggage and eyeglasses — are distributed and sold nationwide by prominent retailers such as Target, Macy's, JC Penney, Boscov's, Walmart, CVS, Walgreens, Amazon.com, Perfumania.com, and Jet.com (*id*. ¶ 15);

- Global, its predecessors-in-interest, and its authorized licensees have made hundreds of millions of dollars in wholesale sales of goods bearing the XOXO mark (*id*. ¶ 16); and

- Global has invested millions of dollars to create general consumer recognition in the XOXO mark, including through advertising campaigns that have appeared in prominent nationwide publications such as Cosmopolitan, Glamour, Seventeen, Latina, and Life & Style, and which have received significant media attention through the use of iconic supermodels including Tyra Banks, Christy Turlington, Claudia Schiffer, Miranda Kerr, and Chrissy Teigen (*id*. ¶¶ 18-20).

When all these factual allegations are considered, Global has pleaded more than

sufficient allegations to give rise to a plausible claim that the XOXO mark is famous.  Indeed,

courts in this District have found fame to be sufficiently pleaded where supported by far less

"factual enhancement" than that which appears in Global's FAC.  For example, in *George*

*Nelson Foundation v. Modernica, Inc.*, the court found that the plaintiff had adequately pleaded

the fame of its allegedly diluted "George Nelson" and "Nelson" marks, because the complaint

alleged that the marks had been in use for more than 60 years "with some of the most famous

designs of the 20th century", and that the marks were published on the cover of Life Magazine

and in World's Fair.  12 F. Supp. 3d 635, 649 (S.D.N.Y. 2014).  In so holding, the court

specifically noted that "publication in well-known national magazines supports a showing the

mark is famous".  *Id*.  Of course, all discussion of the alleged fame of George Nelson took place

in the context of evaluating the sufficiency of the plaintiff's pleading, with the court ultimately

concluding that "the complaint makes sufficient allegations to support the claims asserted". *Id*. at 658.  The court properly deferred any consideration on the merits.

Just like the complaint in *George Nelson Foundation*, Global's FAC alleges that "[a]dvertisements, news articles, and editorials featuring the XOXO Trademarks have appeared in leading mainstream and fashion publications in the U.S., including, for example, Cosmopolitan, Glamour, Seventeen, Latina, Life & Style, and the New York Post", and that the XOXO mark has been in use for over 25 years.  FAC ¶¶ 9, 19.  Indeed, Global's FAC goes much further, among other things: (i) describing a specific XOXO advertising campaign that received significant media attention; (ii) referencing the use of iconic, nationally-known models in advertisements of XOXO-branded goods; (iii) alleging the investment of millions of dollars directed to creating consumer recognition of the XOXO mark; and (iv) pointing to wholesale sales of hundreds of millions of dollars of goods bearing the XOXO mark.  *Id*. ¶¶ 16, 18, 19.

There are numerous additional examples of courts in this District finding dilution claims sufficient to withstand a motion to dismiss where a plaintiff's allegations in support of the fame of its mark were similar to or less specific than the allegations in Global's FAC.  For example, in *Grand v. Schwarz*, the court found fame to have been sufficiently alleged, even if it was "unclear whether Plaintiff will ultimately be able to prevail on his trademark dilution claim", where the plaintiff simply pleaded that the mark was "well recognized by the relevant purchasing public", and that after "investment of significant time and money" the mark was a "unique identifier of services provided by [the] [p]laintiff".  2016 WL 2733133, at *5; *see also Erickson Beamon Ltd. v. CMG Worldwide, Inc.*, No. 12 Civ. 5105, 2014 WL 3950897, at *10 (S.D.N.Y. Aug. 13, 2014) (finding it plausible that "Bette Davis" constitutes a famous mark based on the allegations that the mark is "widely recognized", and that Davis had an acclaimed career with the "attendant

fame and prominence"); *Romeo & Juliette Laser Hair Removal, Inc. v. Assara I LLC*, No. 08 Civ. 442, 2014 WL 4723299, at *4 (S.D.N.Y. Sept. 23, 2014) (finding fame to be sufficiently alleged where "Plaintiff asserts that its marks were used widely in advertisements on the internet and that its services were readily searchable through internet search engines"); *Mister Softee, Inc. v. Marerro*, No. 04 Civ. 4011, 2004 WL 2368009, at *3 (S.D.N.Y. Oct. 21, 2004) (denying defendant's motion to dismiss federal dilution claim where "the Complaint adequately alleges that Mister Softee's marks and trade dress are famous based on its contention that they have been 'continuously used and advertised … throughout the region'"); *Lewittes v. Cohen*, No. 03 Civ. 189, 2004 WL 1171261, at **5-6 (S.D.N.Y. May 26, 2004) (finding fame to be sufficiently alleged where the complaint stated that the mark was in use for a quarter century, "achieved nationwide recognition and respect", and had appeared in numerous television programs); *GMA Accessories, Inc. v. Idea Nuova, Inc.*, 157 F. Supp. 2d 234, 241 (S.D.N.Y. 2000) (denying defendant's motion to dismiss federal dilution claim where its sole argument was that plaintiff's mark was not famous, because plaintiff had alleged that its mark was "famous" and "distinctive").  Global's allegations of fame are far more robust than those pleaded in any of these cases.

But it does not end there.  In *A.V.E.L.A., Inc. v. Estate of Marilyn Monroe*, the court found the fame element of a dilution claim to be adequately pleaded based on allegations remarkably similar to those Global has made here, including that (i) certain "Monroe"-related marks had been used "continuously and pervasively in connection with a wide range of goods and services"; (ii) Monroe had expended "substantial efforts and significant sums of money promoting and advertising" the marks "throughout the United States and internationally"; (iii) there was a "significant publicity" related to the Monroe marks; (iv) there had been "significant

sales of licensed merchandise and services"; (v) products bearing the Monroe marks had been sold throughout the U.S.; and (vi) the marks were registered.  *A.V.E.L.A.*, 131 F. Supp. 3d at 216 (internal citation omitted).

Similarly, Global's FAC alleges that (i) the XOXO mark has been in use for over a quarter century in connection with "an entire suite of products"; (ii) Global expended "millions of dollars and decades of time and effort to create consumer recognition in the XOXO Trademarks"; (iii) there has been "significant media attention" paid to advertising campaigns featuring the XOXO mark; (iv) there have been "hundreds of millions of dollars in wholesale sales of goods bearing the XOXO Trademarks"; (v) products bearing the XOXO marks have been distributed and sold throughout the U.S.; and (vi) Global's XOXO mark is registered.  FAC ¶¶ 9, 10, 12, 15, 16, 18-20.  Accordingly, this Court should reach the same conclusion as the court in *A.V.E.L.A.* — motion to dismiss denied.[4]

Moreover, C&D mischaracterizes the cases that it relies upon to argue that Global's FAC is insufficient to support a plausible finding that its XOXO mark is famous.  For example, with

---

[4] In C&D's reply brief in support of the first iteration of this motion, C&D attempted to distinguish these cases.  C&D argued that the opinions in *Mister Softee*, *Lewittes*, and *GMA Accessories* should be ignored because they were decided prior to passage of the Trademark Dilution Revision Act in 2006 that (at least according to C&D) changed the fame requirement for dilution claims to preclude niche fame.  Dkt. 25 at 13.  This is irrelevant, however, as Global *does not* allege niche fame and those cases did not involve niche fame.  C&D further argued that the decision in *Romeo* was wrongly decided because the allegations were not sufficient to "show the fame" of the mark at issue.  Dkt. 25 at 13-14.  Of course, a court considering a motion to dismiss need not concern itself with whether fame has been "show[n]", but merely whether it has been sufficiently pleaded.  *See supra* at 5.  Lastly, C&D attempted to distinguish *A.V.E.L.A.*, and *Erickson Beamon* by arguing that Marilyn Monroe and Bette Davis (and their corresponding trademarks) were, in fact, famous; however, as noted above, this was not the reason why the courts denied the motions to dismiss in these cases; rather, once again, they focused on the sufficiency of the pleadings.  Dkt. 25 at 13-14.  Similarly here, this Court's focus at this stage is merely the sufficiency of Global's dilution claim as pleaded, as opposed to any evaluation of the merits.  *See supra* at 5.

respect to *Luv N' Care, Ltd. v. Regent Baby Products Corp.*, 841 F. Supp. 2d 753 (S.D.N.Y. 2012), C&D argues that the court "found that a vague allegation of 'hundreds of millions' in sales could not support a finding of 'fame.'"  Dkt. 35 at 16.  Putting aside the fact that Global pleaded far more than just a large amount of sales, the court in *Luv N' Care* actually found the plaintiff's pleading of fame to be insufficient because the plaintiff "plead[ed] no facts regarding their advertising and publicity of the marks of the particular products in suit, nor do they plead that their marks are registered", and the "hundreds of millions" in sales were under *all* of plaintiff's trademarks, rather than the mark-in-suit.  *Luv N' Care*, 841 F. Supp. 2d at 757.[5]

As another example C&D cites *Urban Group Exercise Consultants, Ltd. v. Dick's Sporting Goods, Inc.*, No. 12 CIV. 3599, 2013 WL 866867 (S.D.N.Y. Mar. 8, 2013) to argue that extensive advertising is insufficient to allege fame for purposes of a federal dilution claim.  Dkt. 35 at 17.  Again putting aside the fact that Global pleaded far more than just extensive advertising, the court's decision in *Urban* also turned on the plaintiff's failure to allege that the unregistered trade dress at issue acquired fame prior to the defendant's accused sales.  *Urban Grp.*, 2013 WL 866867, at 6.  It is certainly far more difficult to prove that an unregistered trade dress is sufficiently famous to warrant federal dilution protection, much less protection as a mark in the first place, than a registered word mark.

---

[5] It is also worth noting that, contrary to C&D's argument, neither *Channel One* nor *Bd. of Regents* supports a sales threshold for demonstrating fame.  Both cases actually rested their conclusion on a finding that the plaintiff was asserting niche fame.  *Channel One*, 2017 WL 696126, at *23; *Bd. of Regents*, 550 F. Supp. 2d at 673-79.  In fact, C&D's quotation from *Channel One* is actually a parenthetical quotation, in *dicta*, from another case.  *See Channel One*, 2017 WL 696126, at *23 (quoting *Schutte Bagclosures Inc. v. Kwik Lok Corp.*, 48 F. Supp. 3d 675, 702 (S.D.N.Y. 2014)).  Moreover, the decision in *Bd. of Regents* was a summary judgment decision that evaluated the merits of evidence presented.  550 F. Supp. 2d at 673-79.

> ### 2. *Global's FAC Does Not Allege Niche Fame, But Rather That Its XOXO Mark Is Famous Nationwide*

C&D's "niche fame" argument completely mischaracterizes Global's pleading.  Global has *never* alleged niche fame; indeed, C&D conceded as much in its reply papers on the previous iteration of this motion to dismiss.  Dkt. 25 at 9 (admitting that "Global did not specifically allege recognition of its product was limited to young, fashion-conscious women").  Rather, when Global alleged that many of its XOXO-branded products and promotional materials are directed to young women, Global was making a point about its *infringement* claims — namely, that the likelihood of confusion is increased because C&D is promoting its XOXO condom products to the same target market of young women.  FAC ¶¶ 10, 23.  Global has *never* alleged that its XOXO mark is only famous, for the purposes of its *dilution* claims, among young women.

C&D fails to acknowledge numerous factual allegations in Global's FAC that support the finding that Global's XOXO mark enjoys nationwide fame.  In fact, C&D neglects to mention that just one sentence after alleging that the majority of its XOXO-branded products are designed for young women, Global alleges that the "XOXO brand is a truly lifestyle brand that offers an entire suite of products" beyond its women's apparel line.  FAC ¶ 10.  C&D also ignores the portions of the FAC, already discussed in detail above, which allege (i) widespread promotion and advertising of goods bearing the XOXO mark in leading mainstream and fashion publications in the U.S.; (ii) nationwide distribution of goods bearing the XOXO mark by prominent retailers; and (iii) wholesale sales of goods bearing the XOXO mark in the hundreds of millions of dollars.  *Id.* ¶¶ 16, 19; *cf. George Nelson Found.*, 12 F. Supp. 3d at 649 (finding the allegation of publication of a mark in well-known national magazines alone sufficient to support a finding of fame).  Simply put, the fact that one's product line is designed for a specific

gender or demographic does not prevent the mark used in connection with that product line from achieving fame in the general marketplace. Indeed, C&D's own examples of "truly famous" marks belie this argument, as there can be no dispute that "Barbie dolls" are predominantly targeted to a "niche market" — adolescent girls — and yet apparently C&D does not dispute that the "Barbie dolls" mark is generally famous. *See* Dkt. 35 at 9. In any event, Global's FAC alleges more than sufficient facts to entitle it to the opportunity to offer evidence to prove up its allegations of fame, which is the only issue the Court needs to decide on this motion.

Rather than addressing the sufficiency of Global's allegations, however, C&D once again conflates this Court's task with a determination on the merits. In discussing its strawman "niche fame" argument and arguing that Global's dilution claim should therefore be dismissed, C&D relies heavily on *Michael Caruso & Co. v. Estefan Enterprises, Inc.*, 994 F. Supp. 1454 (S.D. Fla. 1998), in which the court found that the BONGO trademark for apparel could not be shown to be famous, despite being well-known to a certain segment of consumers. Dkt. 35 at 14. What C&D conveniently fails to mention, however, is that the court's findings were made on a motion for a preliminary injunction, where, as this Court well knows, it is incumbent on the plaintiff to show that it is likely to succeed on the merits of its claims. Indeed, *Caruso* says nothing about whether Global's federal dilution claim is well-pleaded. Here, on the other hand, the Court is only concerned with the sufficiency of Global's pleading. *See supra* at 5.

Moreover, several of the cases C&D relies on to bolster its "niche fame" argument actually support the denial of its motion. For example, C&D cites *Helios International S.A.R.L. v. Cantamessa USA, Inc.*, No. 12 Civ. 8205, 2013 WL 3943267 (S.D.N.Y. July 31, 2013), *Luv N' Care, Ltd. v. Regent Baby Products Corp.*, 841 F. Supp. 2d 753 (S.D.N.Y. 2012), and *Heller Inc. v. Design Within Reach, Inc.*, No. 09 Civ. 1909, 2009 WL 2486054 (S.D.N.Y. Aug. 14, 2009) for

the proposition that "[t]here is no basis in the Amended Complaint from which it can be plausibly inferred that recognition of XOXO extends beyond a limited segment of the marketplace". Dkt. 35 at 14. The pleadings in these three cases, however, are readily distinguishable from the allegations in Global's FAC.

In both *Helios International* and *Heller*, the courts found the plaintiff's fame allegations wanting because, as pleaded, they were limited to a certain narrow category or demographic. In *Helios International*, the plaintiff *specifically* alleged that the Crown Logo and Cantamessa marks at issue "have an extremely high degree of recognition *among consumers of luxury jewelry*". *Helios Int'l*, 2013 WL 3943267, at *10 (emphasis in original). Similarly, in *Heller*, the plaintiff *specifically* alleged that the Bellini chair mark at issue was well-known to "the relevant public interested in contemporary furniture". *Heller*, 2009 WL 2486054, at *4. Global's FAC, on the other hand, makes no such limiting allegations of fame. To the contrary, Global alleges that "the *consuming public* has come to associate the XOXO Trademarks with high quality goods and services emanating exclusively from Global". FAC ¶ 18 (emphasis added).

*Luv N' Care* is also readily distinguishable. In that case, as discussed earlier, the court dismissed the plaintiffs' federal dilution claim because they did not allege any facts "regarding their advertising and publicity of the marks of the particular product in suit, nor do they plead that their marks are registered". *Luv N' Care*, 841 F. Supp. 2d at 757. That is not the case here, where Global alleges that its XOXO mark is registered in multiple classes for a wide variety of goods and services (FAC ¶ 12), and that millions of dollars have been spent creating consumer recognition of the XOXO mark, including advertisements in national publications featuring famous, iconic models (*id*. ¶¶ 18, 19). The *Luv N' Care* court also took issue with the plaintiffs'

16

allegations regarding the revenue generated from the sale of goods under their trademarks, as it was not clear from the pleading the extent to which such sales had occurred in the U.S. *Luv N' Care*, 841 F. Supp. 2d at 757. Again, this is not the case here, where Global has alleged that goods bearing the XOXO trademark are distributed and sold nationwide, and have generated hundreds of millions of dollars in wholesale sales in the U.S. FAC ¶¶ 15, 16.

### B.   TO THE EXTENT THE COURT GRANTS C&D'S MOTION, GLOBAL SHOULD BE GRANTED LEAVE TO REPLEAD

C&D asks this Court to dismiss Global's federal trademark dilution claim with prejudice, and to deny Global any opportunity to replead. Assuming, however, that the court finds any merit to the substance of C&D's arguments, which it should not, any dismissal of Global's federal trademark dilution claim should be *without* prejudice, and Global should be granted leave to replead.

Federal Rule of Civil Procedure 15(a) creates a lenient policy toward repleading, and instructs courts to permit leave to replead "freely … when justice so requires." Fed. R. Civ. P. 15(a)(3). It is, therefore, "the usual practice upon granting a motion to dismiss to allow leave to replead." *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991). Indeed, refusal to grant leave to replead without any justifying reason is considered an abuse of discretion. *Id*. (internal citation omitted). Here, C&D articulates no reason why a dismissal should be with prejudice, so even if the Court were inclined to credit C&D's arguments, it would be far from futile for Global to replead its federal trademark dilution claim.[6]

---

[6] As for C&D's argument that Global could have fixed any alleged deficiencies in its federal dilution count when it filed its FAC, that was not the purpose of the FAC; rather, its sole purpose was to add a claim for dilution under New York State law. Global continues to believe that its federal dilution claim is well pleaded, but if the Court were to disagree, then, for the reasons indicated, it should be allowed to replead.

**C.   GLOBAL'S FAC STATES A PLAUSIBLE CLAIM FOR TRADEMARK DILUTION UNDER NEW YORK STATE LAW**

Lastly, C&D asks this Court to find that Global's dilution claim under New York State law is barred by statute because "[t]he ownership by a person of a valid registration" is "a complete bar" to state dilution claims "against that person, with respect to that [registered] mark". Dkt. 35 at 18-21. In so arguing, C&D fails to acknowledge that Global contests the validity of, and seeks to cancel, its XOXO registration. FAC ¶¶ 66-72. In effect, C&D asks the Court to consider Global's state dilution claim in a vacuum and dismiss it on the ground that C&D's challenged XOXO registration is presently valid since the Court has not yet considered Global's cancellation claim. As discussed, however, a court considering a motion to dismiss merely needs to focus on the sufficiency of the pleadings (*see supra* at 5), and, as explained below, Global's challenge to the validity of C&D's XOXO registration is, in and of itself, sufficient to allow its state dilution claim to proceed.

C&D does not challenge the sufficiency of Global's New York dilution claim, but merely asserts that the claim is barred by Section 1125(c)(6). That statutory bar only applies, however, if C&D owns a "*valid* registration" — a contention that Global expressly disputes by way of its claim for cancellation of C&D's XOXO registration. 15 U.S.C. § 1125(c)(6) (emphasis added).[7] There is ample case law to support this proposition, and none to undermine it. Indeed, the Northern District of Georgia in *Lovetap, LLC v. CVS Health Corporation*, No. 1:16-CV-3530-TWT, 2017 WL 3250374 (N.D. Ga. July 31, 2017) aptly explained the impact of this requirement in a case very similar to this one. There, Lovetap sued CVS alleging trademark infringement under federal and state law, dilution under Georgia state law, and sought

---

[7] Prior to October 5, 2006, Section 1125(c)(6) appeared, in substance, as Section 1125(c)(3).

cancellation of CVS' allegedly infringing federally-registered marks. *Id.* at **1-2. CVS moved to dismiss Lovetap's state dilution claim, arguing that it was barred by Section 1125(c)(6) because its allegedly diluting marks were federally registered. *Id.* CVS even made the exact same argument that C&D now advances, namely, that Congress intended the statutory bar to apply even if the registration's validity is in dispute. *Compare* Dkt. 35 at 19-20, *with Lovetap*, 2017 WL 3250374, at **2-4. The court rejected CVS' argument regarding congressional intent, and denied its motion, finding as follows:

> [T]he statute states that only "valid registration[s]" enjoy th[e] protection [of Section 1125(c)(6)]. "It is the duty of the court to give effect, if possible, to every clause and word of a statute, avoiding, if it may be, any construction which implies that the legislature was ignorant of the meaning of the language it employed." [*Inhabitants of Montclair Twp. v. Ramsdell*, 107 U.S. 147, 152 (1883).]
>
> *            *            *
>
> The Defendants argue that it was Congress' intent to "(i) incentivize federal registration of marks, and (ii) prevent states from regulating the use of federally registered marks . . ." The Defendants contend that the only way to achieve this intent, and thus the only proper interpretation of the statute, is to provide a sort of super defense in which a defendant must merely show that the trademarks are registered to avoid all dilution claims, regardless of whether those registrations are valid or not. This would of course render the word "valid" completely superfluous, which as discussed above, is a non-starter in statutory interpretation.
>
> *            *            *
>
> Congress was clear, through the language it enacted into law, that it intended for § 1125(c)(6) to provide a complete bar to state dilution claims against valid registrations. The inclusion of "valid," based upon the plain meaning of the word, necessarily means that § 1125(c)(6) does not apply to those federal registrations that are *invalid*. As such, the Court finds that when there is a question as to the validity of a federally registered trademark, and a plaintiff seeks to cancel that trademark with a

> well-pleaded complaint, § 1125(c)(6) does not mandate immediate
> dismissal of a plaintiff's related state claim for dilution.

*Id.* at *4 (emphasis in original).  In short, a well-pleaded cancellation claim defeats a motion to dismiss a state law dilution claim on the basis of Section 1125(c)(6), because the validity of the registration is in dispute and the statutory bar would not apply if the registration is ultimately invalidated.  *Id.*; *see also V.V.V. & Sons Edible Oils Ltd. v. Meenakshi Overseas LLC*, No. 2:14-cv-02961-TLN-CKD, 2016 WL 1268008, at *11 (E.D. Cal. Mar. 31, 2016).  Of course, a defendant can challenge whether the cancellation claim that thwarts the Section 1125(c)(6) defense is well-pleaded, but "[p]erhaps tellingly," CVS — like C&D — did not do so.  *Lovetap*, 2017 WL 3250374, at *4.

Notably, *Lovetap* is by no means the only case that has so held.  Indeed, *no* court has ever applied the Section 1125(c)(6) statutory bar to a state dilution claim when there was also a pending cancellation claim challenging the validity of the registration that would be the basis for the statutory bar.  To the contrary, courts in multiple circuits — including at least three courts of appeal — have uniformly denied dispositive motions in these circumstances.  *See Jada Toys, Inc. v. Mattel, Inc.*, 518 F.3d 628, 635 n.4 (9th Cir. 2008) (denying a motion for summary judgment, in part because Section 1125(c)(6) would be "inapplicable" if defendant succeeds on its cancellation claim); *Jet, Inc. v. Sewage Aeration Sys.*, 165 F.3d 419, 424 (6th Cir. 1999) (in the context of a motion for summary judgment, finding that a state dilution claim is not barred where the plaintiff is seeking to cancel the defendant's registration); *Viacom Inc. v. Ingram Enters.*, 141 F.3d 886, 891 n.8 (8th Cir. 1998) (in the context of a motion for a permanent injunction, finding that a state dilution claim is not barred where the plaintiff could "establish[] that [the defendant] does not own a 'valid registration'"); *Buc-ee's, Ltd. v. Panjwani*, No. 4:15-CV-03704, 2017 WL 4221461, at *4 (S.D. Tex. Sept. 21, 2017) (denying motion for partial summary judgment where

plaintiff challenged the validity of the defendants' registration); *Under Armour, Inc. v. Body Armor Nutrition, LLC*, No. CIV. JKB-12-1283, 2013 WL 5375444, at *5 (D. Md. Aug. 23, 2013) (denying summary judgment because, "if Plaintiff succeeds in cancelling Defendant's registration, then that cancelled registration cannot act as a bar to any claim").

The cases C&D cites are not to the contrary.  For example, in *N.J. Physicians United Reciprocal Exch. v. Privilege*, No. 15-cv-6911, 2016 WL 6126914 (D. N.J. Oct. 18, 2016), the court expressly noted, in dismissing the plaintiff's state dilution claim, that the plaintiff had not sought to cancel the defendant's registration.  *Id.* at *5 n.5 (suggesting that the plaintiff may wish to add a cancellation claim to its complaint).  Similarly, in *Westchester Media Co. v. PRL USA Holdings, Inc.*, 103 F. Supp. 2d 935 (S.D. Tex. 1999), the court expressly noted, in dismissing the defendant's state dilution claim, that the defendant "[did] not contest the validity of [the plaintiff's] registration" (*id.* at 943), while at the same time acknowledging the Eighth Circuit's "observ[ation] that the federal statute still allows a party to contest the 'validity' of the registration" (*id.* at 977).

Although it does not appear that any court in this Circuit has considered this issue directly, just as many other courts have done, this Court too should decline to apply the statutory bar in view of Global's pending cancellation claim.  C&D does not challenge Global's state dilution claim beyond the statutory bar.  Nor does C&D dispute that Global has pleaded a plausible cancellation claim challenging the validity of C&D's trademark registration.  That is all the Court needs to consider in order to deny C&D's motion.  *E.g.*, *Lovetap*, 2017 WL 3250374, at *4; *see also Jada Toys*, 518 F.3d at 635 n.4.[8]

---

[8] It is worth noting that the plaintiff in the *George Nelson* case, cited earlier in the discussion of

It should also be emphasized that a decision to grant C&D's motion would run contrary to principles of statutory construction, and notions of judicial economy.  In order to grant C&D's motion prior to considering the merits of Global's cancellation claim, the Court would have to find that the use of the word "valid" in Section 1125(c)(6) is completely superfluous and has no meaning.  *See Lovetap*, 2017 WL 3250374, at *4.  That would be entirely improper, because "[t]o write [the word 'valid'] … out of the text would be 'at odds with one of the most basic interpretive canons, that a statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant.'"  *Lawrence + Mem'l Hosp. v. Burwell*, 812 F.3d 257, 265 (2d Cir. 2016) (quoting *Corley v. U.S.*, 556 U.S. 303, 314 (2009)).  In addition, it would be a colossal waste of the Court's and the parties' resources if Global were required to commence serial lawsuits, first trying its cancellation claim to completion, and only afterward being permitted to assert a state dilution claim in a new, separate action.  Furthermore, allowing Global to maintain its state law dilution claim will not prejudice C&D in any way, and will not expand the scope of discovery in this matter.

---

Global's federal dilution claim, also asserted a state dilution claim.  *See George Nelson Found.*, 12 F. Supp. 3d at 651-52.  Although the defendant moved to dismiss that claim as well, it apparently did not think the Section 43(c)(6) statutory bar was an argument worth raising, presumably because the plaintiff had also asserted a claim for cancellation of the defendant's federal registration.  *George Nelson Found.*, 12 F. Supp. 3d at 640.  In any event, the court rejected the defendant's arguments and refused to dismiss the plaintiff's state dilution claim, finding that it was well pleaded.  *Id.* at 652.

## V.      CONCLUSION

For all the foregoing reasons, Global requests that this Court deny C&D's motion to

dismiss Global's federal and state trademark dilution claims.


Dated: New York, New York                    ARNOLD & PORTER KAYE SCHOLER LLP
            November 10, 2017

                                             By:      /s/ Louis S. Ederer
                                                   Louis S. Ederer
                                                   louis.ederer@apks.com
                                                   Matthew T. Salzmann
                                                   matthew.salzmann@apks.com
                                                   Maxwell C. Preston
                                                   maxwell.preston@apks.com
                                                   Harry K. Fidler
                                                   harry.fidler@apks.com
                                                   250 West 55th Street
                                                   New York, New York 10019-9710
                                                   Phone: (212) 836-8000
                                                   Fax: (212) 836-8689

                                                   *Attorneys for Plaintiff*
                                                   *Global Brand Holdings, LLC*