USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: December 19, 2017

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
:
GLOBAL BRAND HOLDINGS, LLC,                      :
:
Plaintiff,      :
:
-v-                 :           17-cv-6571 (KBF)
:
CHURCH & DWIGHT CO., INC.,                          :           OPINION & ORDER
:
Defendant.     :
:
------------------------------------------------------------ X

KATHERINE B. FORREST, District Judge:

Global Brand Holdings, LLC ("Global" or "plaintiff") is the owner of a number of registered trademarks that include the phrase "XOXO" for, <u>inter alia</u>, young women's apparel and accessories. (Am. Compl., ECF No. 26, ¶ 12.) Church & Dwight Co. ("Church & Dwight" or "defendant"), which owns the Trojan condom brand, owns a registered trademark for "XOXO" for use in connection with condoms. On August 29, 2017, Global filed suit against Church & Dwight for federal and state trademark infringement and dilution claims.

The instant motion concerns solely the dilution claims. The law provides for broad relief when a plaintiff holds a truly famous mark—such as Coca-Cola, Nike, Kodak, or Buick—and when actions by a defendant (with regard to a product that may or may not be within the scope of the registration) may dilute the value of that mark in some way. Most importantly, and unlike trademark infringement claims, a

"trademark dilution" claim does not require a plaintiff to demonstrate likelihood of confusion between the two marks.

Defendant's motion to dismiss plaintiff's federal and state trademark dilution claims asserts that (1) the allegations are insufficient to support the requisite degree of "fame"; and (2) the complete bar to suit for state dilution claims, found in § 1125(c)(6), requires dismissal of Count VII. The Court held oral argument on November 30, 2017.

For the reasons set forth below, defendant's motion is GRANTED.

I. BACKGROUND

The following factual allegations are drawn from the Amended Complaint and assumed true for purposes of this motion.

Plaintiff Global owns at least fourteen registered trademarks that include the term "XOXO" in connection with use on goods including clothing, shoes, cosmetics, watches, luggage, bedding, perfume, body cream, and more. (Id. ¶ 12.) Plaintiff specifically alleges that it designs its products for young women and emphasizes the "feminine, fashionable, confident, romantic, and sexy nature of their XOXO-branded products." (Id. ¶ 10.) Plaintiff uses the tagline "Smart Sexy" and describes its XOXO-branded products as "sexy." (Id. ¶ 10.) Its products—which often contain "one or more hangtags . . . prominently featur[ing] the XOXO trademarks"—are sold nationwide through brick-and-mortar stores such as Target and Walmart, as well as online at Amazon.com, Jet.com, and elsewhere. (Id. ¶¶ 15, 17.)

Plaintiff has made hundreds of millions of dollars on sales of goods bearing its XOXO trademarks and has invested millions of dollars as well as "decades of time and effort to create consumer recognition" in the marks. (Id. ¶ 16, 18.) Its advertisements for XOXO-branded products, which have featured "iconic" models "dressed in a seductive manner," have appeared in "leading mainstream and fashion publications in the U.S., including, for example, Cosmopolitan, Glamour, Seventeen, Latina, Life & Style, and the New York Post." (Id. at ¶¶ 19–21.) Plaintiff points to an "advertising campaign featuring high fashion models living in a Fifth Avenue storefront display for several days" as the reason for "significant media attention." (Id. ¶ 19.) As a result of all this, plaintiff alleges, the "consuming public has come to associate the XOXO Trademarks with high quality goods and services emanating exclusively from Global." (Id. ¶ 18.)

Defendant distributes, advertises, and sells household and personal care products, including a line of condoms featuring an "XOXO" mark. (Id. ¶ 4; Mem. of Law in Supp. of Def.'s Mot. to Dismiss Pl.'s Trademark Dilution Claims ("Mem. Supp."), ECF No. 35, at 6.) Its tagline is "SMART. SEXY. CONFIDENT." (Am. Compl. at ¶ 23.) Its advertising is similarly geared towards young, fashion-conscious women. (Id.) Like plaintiff's goods, defendant's Trojan condoms are sold at brick-and-mortar stores as well as through online retailers by Walmart, Target, Amazon.com, Jet.com, and others.

Plaintiff contends that defendant's use of "XOXO" on its condoms infringes upon its trademarks and has "intentionally and willfully diluted, and/or is likely to

3

dilute the distinctive quality of plaintiff's famous XOXO Trademarks." (Id. ¶¶ 58, 60.)

II. STANDARD OF REVIEW

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must provide grounds upon which their claim rests through "factual allegations sufficient 'to raise a right to relief above the speculative level.'" ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). In other words, the complaint must allege "'enough facts to state a claim to relief that is plausible on its face.'" Starr v. Sony BMG Music Entm't, 592 F.3d 314, 321 (2d Cir. 2010) (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

In applying that standard, the Court accepts as true all well-pled factual allegations, but does not credit "mere conclusory statements" or "threadbare recitals of the elements of a cause of action." Id. Furthermore, the Court will give "no effect to legal conclusions couched as factual allegations." Port Dock & Stone Corp. v. Oldcastle Ne., Inc., 507 F.3d 117, 121 (2d Cir. 2007) (citing Twombly, 550 U.S. at 555). If the Court can infer no more than the mere possibility of misconduct from the factual averments—in other words, if the well-pled allegations of the complaint

4

have not "nudged [Plaintiff's] claims across the line from conceivable to plausible"—dismissal is appropriate. Twombly, 550 U.S. at 570.

III. TRADEMARK DILUTION

    A. Legal Principles

In addition to addressing trademark infringement generally, the Lanham Act proscribes dilution of "famous" trademarks. 15 U.S.C. § 1125(c). A claim for trademark dilution requires a plaintiff to establish: "(i) its mark is famous; (ii) the defendant is making commercial use of the mark in commerce; (iii) the defendant's use began after the mark became famous; and (iv) the defendant's use of the mark dilutes the quality of the mark by diminishing the capacity of the mark to identify and distinguish goods and services." Louis Vuitton Malletier v. Dooney & Bourke, Inc., 454 F.3d 108, 118 (2d Cir. 2006). If dilution can be established, the statute provides for, inter alia, an injunction against the defendant's use of the mark in question. 15 U.S.C. § 1125(c)(1); id. § 1125(c)(5); see also id. § 1117(a); id. § 1118. Injunctive relief is a "drastic and extraordinary remedy, which should not be granted as a matter of course." Monsanto Co. v. Geertson Seed Farms, 561 U.S. 139, 165 (2010). Thus, "fame is the key ingredient" in a federal claim for trademark dilution, as this broad form of relief must be reserved for only the most well-known marks. Savin Corp. v. Savin Grp., 391 F.3d 439, 449 (2d Cir. 2004).

The question before the Court is whether plaintiff has plausibly alleged that its "XOXO" marks have the requisite degree of fame such that they receive protection from dilution under § 1125(c). When a Court can determine early in

5

litigation that an allegedly infringed-upon mark is not famous as a matter of law, the Second Circuit has held that it should do so:

> where it is possible for a district court to determine in the first instance the issue of the famousness of a senior mark, the court would be well advised to do so. Indeed, this will often obviate the costly litigation of potentially much thornier issues, such as whether actual blurring or tarnishing of the senior mark has in fact occurred or, as in the instant case, whether a junior and senior mark that are each used in varying ways in different contexts and media are in fact "identical" for purposes of the FTDA.

Savin, 391 F.3d at 450.

Before 2006, the Lanham Act did not specify what qualified as a "famous" mark. In 2006, it was amended to define "famous" as "widely recognized by the general consuming public of the United States." Compare Trademark Dilution Revision Act of 2006, Pub. L. No. 109-32, § 2, 120 Stat. 1730, 1731–32 (2006) ("the 2006 Act") (codified at 15 U.S.C. § 1125(c)(2)(A)), with Federal Trademark Dilution Act of 1995, Pub. L. No. 104-98, § 3, 109 Stat. 985, 985–86 (1996). This amendment ensures that dilution causes of action are restricted to "those few truly famous marks like Budweiser beer, Camel cigarettes, Barbie Dolls, and the like." Luv N' Care, Ltd. v. Regent Baby Prod. Corp., 841 F. Supp. 2d 753, 758 (S.D.N.Y. 2012) (quoting Bd. of Regents v. KST Elec., Ltd., 550 F. Supp. 2d 657, 679 (W.D. Tex. 2008)); see also Starbucks Corp. v. Wolfe's Borough Coffee, Inc., 588 F.3d 97, 105 (2d Cir. 2009) (noting that "the requirement that the mark be 'famous' and 'distinctive' significantly limits the pool of marks that may receive dilution protection"). According to the statute, in determining whether the mark possesses the "requisite degree of recognition," the Court may consider, inter alia, "[t]he

6

duration, extent, and geographic reach of advertising and publicity of the mark, whether advertised or publicized by the owner or third parties," "[t]he amount, volume, and geographic extent of sales of goods or services offered under the mark," and "[t]he extent of actual recognition of the mark." Id. § 1125(c)(2)(A)(i)-(iii).

Courts in this District and across the country have differed in their application of 15 U.S.C. § 1125(c), and the Second Circuit has not formulated a clear test to measure the sufficiency of allegations regarding "fame." Some courts have found that "fame" is sufficiently pled when plaintiffs allege large advertising budgets or high revenue; others have found that a mark qualifies as "famous" when it is well-known by a limited population (i.e., it has achieved "niche fame"). This Court respectfully disagrees with those interpretations of the 2006 Act. The text of the 2006 Act explicitly permits only those who own trademarks that are "widely recognized by the general consuming public of the United States" to bring suits for trademark dilution. 15 U.S.C. § 1125(c)(2)(A) (emphasis added). The breadth of this statutory language is clear and requires more than niche fame (which would not constitute either "wide" recognition or recognition by the "general" public) and/or a substantial budget (which may or may not result in any real recognition). Rather, the mark is "famous" only if the general consuming public would recognize it as designating the source of some good or service. To survive a motion to dismiss, then, a plaintiff must sufficiently plead this level of fame.

For example, in a case concerning "Marilyn Monroe" trademarks, a court in this District found that the plaintiff alleged the requisite recognition—that is to say,

7

"fame"—of its mark by pointing to, inter alia, "the world-renowned celebrity of Marilyn Monroe" and the "significant publicity related to Marilyn Monroe." First Am. Compl. ¶ 21, A.V.E.L.A., Inc. v. Estate of Marilyn Monroe, 131 F. Supp. 3d 196 (S.D.N.Y. 2015) (No. 12-cv-4828); see also id., 131 F. Supp. 3d at 216. In contrast, the Second Circuit found that a complaint did not sufficiently allege that the mark "The Children's Place" was famous when the plaintiff's assertions were based on scope and quantum of its advertising budget only. TCPIP Holding Co. v. Haar Comms., Inc., 244 F.3d 88, 99 (2d Cir. 2001) (noting that the plaintiff claimed that it operated 228 retail stores in twenty-seven states, earned $280 million in the preceding year, and spent "tens of millions of dollars" advertising its mark).[1] Without "consumer surveys, press accounts, or other evidence of fame," the complaint was insufficient. Id.; see also Mead Data Ctr., Inc. v. Toyota Motor Sales, U.S.A., Inc., 875 F.2d 1026, 1038 (2d. Cir. 1989) (finding that a mark was not famous when only two percent of the general public recognized it). Simply put, "unsubstantiated conclusory phrases like 'the mark The Children's Place has been widely recognized by American consumers'" were insufficient to support an allegation of fame. TCPIP, 244 F.3d at 99.

Plaintiff points to a number of cases in this District finding that various trademarks had achieved the requisite level of fame; however, this Court respectfully disagrees with a number of those decisions. For example, one court

---

[1] This case was decided before the amendments to the Lanham Act in 2006. The standard for "fame" is now, if anything, plainly higher. Additionally, while this case was regarding a preliminary injunction, rather than a motion to dismiss, the Court believes the Second Circuit's determination that "fame" did not exist based on TCPIP's allegations is supportive of its decision in this case.

found that a plaintiff survived a motion to dismiss when the complaint included conclusory allegations as to a "famous" mark that was "well recognized by the relevant purchasing public." Grand v. Schwartz, No. 15-cv-8779, 2016 WL 2733133, at *5 (S.D.N.Y. May 10, 2016). In that case, the trademark at issue was "brainspotting," a mark for "a type of 'psychological counseling' used to treat mental disorders like Post Traumatic Stress Disorder." Id. at *1. The complaint alleged that the treatment utilizing the mark had been used on "thousands of clients . . . throughout the United States and around the world," and plaintiff had invested "significant time and money" in promoting the term as a unique identifier of his services. Id. at *5. This Court does not view such allegations as sufficient to allege plausible fame "widely recognized by the general consuming public." Rather, this is classic "niche" fame only. Indeed, the TCPIP decision supports a determination that allegations like those made in Grand are not sufficient to state a dilution claim. See also Urban Grp. Exercise Consultants, Ltd. v. Dick's Sporting Goods, Inc., No. 12-cv-3599, 2013 WL 866867, at *7 (S.D.N.Y. Mar. 8, 2013). And, the Grand plaintiff's additional statements that his trademark was "famous" and "well recognized by the relevant purchasing public" were little more than "mere conclusory statements" or "threadbare recitals of the elements of a cause of action" for trademark dilution. Iqbal, 556 U.S. at 678; see also TCPIP, 244 F.3d at 99.

Moreover, the 2006 Act's plain text clarifies that niche fame is not enough. See Luv N' Care, Ltd., 841 F. Supp. 2d at 757–58 (noting that "the inclusion in the TDRA of the phrase 'widely recognized by the general consuming public of the

9

United States' 'was intended to reject dilution claims based on niche fame, i.e. fame limited to a particular channel of trade, segment of industry or service, or geographic region'" (quoting Dan-Foam A/S v. Brand Named Beds, LLC, 500 F. Supp. 2d 296, 307 n.90 (S.D.N.Y. 2007)); see also Urban Grp. Exercise, 2013 WL 866867, at *7 (finding that "even if this allegation is understood to mean that several hundred thousand gym-goers in the United States have used an Urban Rebounder trampoline bearing the alleged trade dress, this allegation is still insufficient to establish that the alleged trade dress is 'widely recognized by the general consuming public of the United States,' a group that numbers well over 200 million people" (quoting 15 U.S.C. § 1125(c)(2)(A))); Helios Int'l S.A.R.L. v. Cantamessa USA, Inc., No. 12-cv-8205, 2013 WL 3943267, at *10 (S.D.N.Y. July 31, 2013) (holding that it is insufficient to "allege that the marks have an extremely high degree of recognition among consumers of luxury jewelry," as "[t]his is the very definition of the type of 'niche' fame that is insufficient to support a finding of fame for TDRA purposes" (internal quotation omitted)). Conversely, allegations that a mark was famous not just to "a small part of the country, or among a small segment of the population," but rather was "widely recognized" may suffice to allege fame. Erickson Beamon Ltd. v. CMG Worldwide, Inc., No. 12-cv-5105, 2014 WL 3950897, at *10 (S.D.N.Y. Aug. 13, 2014) (finding that "Bette Davis" is a famous mark).

Nor does this Court read allegations that plaintiff here invested money (even a lot of it) or used its marks widely in internet advertisements as sufficient to state a plausible claim that a mark is famous. See Urban Grp. Exercise, 2013 WL

10

866867, at *6 (finding that "allegations in [a complaint] regarding [the plaintiff's] overall sales, advertising expenses, and third party recognition of its 'Urban Rebounder' brand cannot support a finding that the alleged trade dress is 'widely recognized by the general consuming public of the United States.'" (quoting 15 U.S.C. § 1125(c)(2)(A)). But see Grand, 2016 WL 2733133, at *5 (finding that investment of time and money supports an allegation of fame); Romeo & Juliette Laser Hair Removal, Inc. v. Assara I LLC, No. 08-cv-0442, 2014 WL 4723299, at *4 (S.D.N.Y. Sept. 23, 2014) (finding that allegations of pervasive internet advertising support an allegation of fame). Deciding otherwise would transform "fame" under the 2006 Act into a dollar test; it would allow any company to protect its trademarks as "famous" merely by virtue of a large advertising budget or high revenues. This is not the law. The text of the statute clearly indicates that protection from dilution is to be afforded to a much smaller subset of marks—only those that the general public would recognize, not <u>all</u> of those with big budgets.

In sum, to state a dilution claim under § 1125(c), plaintiffs must plausibly allege <u>wide</u> recognition by the <u>general consuming public</u>. While this does not require consumer surveys or other data, it does mean that high revenues and/or advertising widely is enough.

B. <u>Discussion</u>

These legal principles leave no doubt that the Amended Complaint does not plausibly allege that plaintiff's "XOXO" marks are "famous" for the purposes of § 1125(c). Plaintiff points to its allegations that goods bearing its marks are sold

11

nationwide and online through large, well-known retailers, and that it has spent millions of dollars to create consumer recognition in the marks. But, as the principles above make clear, this is insufficient in and of itself to plausibly allege fame to the <u>general consuming public</u>. Plaintiff's statement that the "consuming public has come to associate the XOXO Trademarks with high quality goods and services emanating exclusively from Global," (Am. Compl. ¶ 18), does not provide any factual detail (i.e., how much of the consuming public or how close and well-known an "association"). Similarly, plaintiff's allegations of advertisements, news articles, and editorials in mainstream publications are, as the legal principles above make clear, simply not enough. Many brands are advertised in the publications plaintiff lists—not all are "famous." <u>See</u> <u>TCPIP Holding Co.</u>, 244 F.3d at 99.

Additionally, plaintiff's allegation that it has made efforts toward creating "consumer recognition" is insufficient to state a plausible claim of fame for two reasons. (<u>See</u> Am. Compl. ¶ 18.) "Effort" toward achieving fame is not equivalent to having achieved the requisite fame. And "consumer recognition" is not the same as an allegation of wide recognition by the <u>general</u> consuming public. In both cases, Section 1125(c) mandates the latter. On the face of the Amended Complaint, the allegations support recognition by the young women for whom the XOXO-branded products are designed, (Am. Compl. ¶ 10), not by the general consuming public.

Furthermore, plaintiff responds to defendant's argument that, at best, plaintiff's "XOXO" marks have achieved niche fame among young women by arguing that some bona fide famous marks, such as Victoria's Secret and Barbie

12

dolls, are also targeted toward niche audiences such as young women. However, whether a mark's fame is general or niche does not turn on the target audience for the goods being sold; rather, it turns on the scope and nature of recognition. So even if Barbie dolls and Victoria's Secret apparel are <u>marketed</u> to a specific segment of the population, the associated trademarks are <u>recognized</u> by the general public. <u>See</u> <u>Moseley v. V Secret Catalogue, Inc.</u>, 537 U.S. 418, 432 (2003) ("The VICTORIA'S SECRET mark is unquestionably valuable and petitioners have not challenged the conclusion that it qualifies as a "famous mark" within the meaning of the statute."); <u>Mattel, Inc. v. MCA Records, Inc.</u>, 296 F.3d 894, 903 (9th Cir. 2002) (noting that "Barbie easily qualifies under the FTDA as a famous and distinctive mark").

In sum, the Amended Complaint does not allege that the general consuming public in the United States widely recognizes its XOXO marks. Allowing allegations about plaintiff's budget and revenues to underlie a claim of "fame" would significantly expand the pool of marks that could be the subject of dilution claims, when Congress clearly intended only to protect marks that the general public recognizes. For this reason, plaintiff's federal trademark dilution claim (Count V) is DISMISSED.

IV. FEDERAL PREEMPTION OF STATE LAW DILUTION CLAIM

    A. <u>Legal Principles</u>

The Lanham Act also contains a "complete bar" to actions for dilution under state law against defendants who own a validly registered trademark. 15 U.S.C. §

13

1125(c)(6).² As with the "fame" requirement for dilution, (see Part III), courts vary in their interpretations of this provision. It seems to the Court, however, that the statute means what it says: if a defendant holds a valid mark when a state law dilution claim is filed, the statute provides a <u>complete</u>—not a contingent—bar to that claim and it must be dismissed.

Plaintiff argues that the statute does not preclude state law dilution claims in instances where, notwithstanding a <u>currently</u> valid mark, the complaint includes a claim for cancellation of the mark. Under this reading of the statute, as long as a plaintiff asserts a cancellation claim, it can get around the bar and force litigation on the claim. Thus, the holder would only get the benefits of the bar after a court had fully adjudicated a cancellation claim—suit would rarely be precluded in fact. This is contrary to the language of the statute and the legislative intent. It also frustrates the broader purposes of the Lanham Act: any party could circumvent the state bar simply by including a claim for cancellation of the defendant's trademark. The statutory language includes the word "complete"; that word must be given meaning.

Additionally, the statutory requirement of a "valid" trademark means that state law actions are not barred if a defendant's trademark has no legal force (for

---

² The statute provides in relevant part: "The ownership by a person of a valid registration ... on the principal register under this chapter shall be a complete bar to an action against that person, with respect to that mark, that—
    (A) is brought by another person under the common law or a statute of a State; and
    (B)(i) seeks to prevent dilution by blurring or dilution by tarnishment; or
       (ii) asserts any claim of actual or likely damage or harm to the distinctiveness or
       reputation of a mark, label or form of advertisement."
15 U.S.C. § 1125(c)(6).

example, if it has been canceled or abandoned). It does not mean, as plaintiff's argument would require, that a state law action is not barred when the trademark is <u>subject to</u> cancellation. All trademarks are, in some sense, subject to cancellation. There is no "immortal" trademark—any trademark may be cancelled if a plaintiff can prove, for example, that dilution, blurring, or genericide has occurred. See 15 U.S.C. § 1064. Thus, the word "valid" must have another, more specific meaning. The Court agrees with defendant—the term limits the provision to those trademarks which are valid <u>at the time the lawsuit was filed</u>; that is to say, they are not abandoned or already cancelled.

Thus, as a whole, the provision precludes dilution claims under state law if the defendant has a valid registration when the suit is filed.

B. <u>Discussion</u>

Defendant owns a valid federal trademark registration for the use of the "XOXO" mark for condoms. (Mem. Supp. at 19; <u>see also</u> Am. Compl., Ex. C (ECF No. 26-3), at 2.) This trademark is valid insofar as it is neither abandoned nor cancelled; thus the state law claim is barred by the statute's clear text.

Thus, defendant's motion to dismiss plaintiff's state law dilution claim (Count VII) is GRANTED.

V. CONCLUSION

For the foregoing reasons, defendant's motion to dismiss Counts V and VII of the Amended Complaint are GRANTED. The Clerk of Court is directed to terminate the open motion at ECF No. 34.

SO ORDERED.

Dated: New York, New York
December 19, 2017

_____
KATHERINE B. FORREST
United States District Judge